THOMAS BAVINGTON and others *against* JAMES CLARKE.

IN ERROR.

Pen. & W.
2pw115
135  372

Pen & W
2pw115
158  184

2pw115
179  161

2pw115
184  501

A judgment against a tenant in common, does not prevent a partition, at his instance against whom the judgment is, or that of any other of the tenants.    If partition is made, the lien of the judgment will attach to the part allotted to the defendant in the judgment.    So also in case of a mortgage on an undivided share of land.

In such case, a partition may be made without suit, if fairly done.

Where any one, even an infant, does that which by law he is compellable to do, such as making equal partition, he is bound.

Where land is confirmed by the Orphans' Court, in a proceeding on a writ of partition and valuation, to the eldest son, such confirmation is not conclusive evidence that the title to the land is thereby vested absolutely in him; it is competent, on the trial of an ejectment for the land, for the other heirs to shew, that the land was confirmed to him under an agreement between all the heirs, by which a trust was established.    And this may be shewn even in an ejectment brought by one who purchased the land at sheriff's sale, as the property of the eldest son, upon a judgment obtained against him after the confirmation by the Orphans' Court, leaving it to the jury to determine, whether he is an innocent purchaser, without notice of such agreement.

If in such a case of confirmation by the Orphans' Court, no recognizance were taken, it would vest no title in him to whom the land was confirmed.

WRIT of error to the Common Pleas of Washington county.

This was an action of ejectment brought by *James Clarke* the defendant in error, against *Thomas Bavington* and others, heirs of *John Bavington,* deceased, for 400 acres of land.    Both plaintiff and defendants claimed under the title of *John Bavington,* deceased.    The plaintiff, to sustain the issue on his part, gave in evidence,

the title of *John Bavington.*—1811, March 21st, the petition of *Daniel Bavington* eldest son of *John Bavington*, deceased, for a writ of partition and valuation, stating that the intestate left a widow and eleven children; which was awarded:—31st October, 1811, inquest returned, that the land could not be divided, and it was valued at $4600: and on the same day, rule at the instance of *Daniel*, upon the other heirs, to shew cause why he should not take the land at the valuation:—23d March, 1812, proof of the service of this rule on the other heirs was made:—28th December, 1815, a rule was again taken upon the heirs, to shew cause why the land should not be confirmed to *Daniel* the eldest son:—19th June, 1816, the land was confirmed to *Daniel Bavington*, upon his. entering into recognizance, with sufficient security, to pay over to the other heirs, their respective proportions according to law:—21st June, 1816, "*Daniel Bavington*, *Thomas Clarke*, and *Andrew Kerr tent* jointly and severally in the sum of $9000, to be void on this condition; that *Daniel Bavington* pay over to the other heirs and representatives of the said *John Bavington*, deceased, their respective shares, and proportional part of the said estate."—1819, April 12th, judgment *John Defrance* "against *Daniel Bavington* for $1600:—June Term 1820, *fi. fa.* levied on a tract of land containing 120 acres with a grist mill, saw mill, &c." which was condemned.   In the list of liens exhibited for the condemnation of the property, were included the sums awarded to the different heirs of *John Bavington*, deceased, by arbitrators, in the case of *Daniel Bavington* v. *Thomas Bavington* and others, as will be hereafter referred to.   December Term, 1821, *al. ven. expos.* "Property sold to *James Clarke* for $640." December 31st, 1821, deed *Robert Officer* sheriff, to *James Clarke*, "defendant's interest being the two ninth parts, more or less." March Term, 1822, *fi. fa.* for residue: "Levied on the undivided seven ninth parts of a tract of land in, &c. containing 400 acres, more or less, adjoining, &c. being the residue of the land which was not sold, upon which *John Bavington* father of *Daniel Bavington*, lived and died;" which was condemned, &c. 5th July, 1825, this *fi. fa.* levy, and all subsequent proceedings were set aside.   September Term, 1825, *al. fi. fa.* "Levied on all the right, title, interest and claim of the defendant, *Daniel Bavington*, in a certain tract of land in, &c., containing 400 acres more or less, subject to the previous sale to *Daniel Bavington* and subject to the claims of the heirs in the recognizance in the Orphans' Court of 1811." Inquisition held and condemned. *Ven. expos.* to December Term, 1825, which was returned, "sold to *James Clarke* for $700: to whom sheriff. *Workman* made a deed, 27th December, 1825.

The defendants, to sustain their defence, produced and offered

(Thomas Bavington and others *v.* James Clarke.)

*James Stevenson* to prove, that at the time of holding the inquisition, under the writ issued by the Orphans' Court, the inquest was directed by *Daniel Bavington,* and his brethren not to attempt a division of the land into two or more parts, but to appraise and value it merely; that they had agreed to work together upon the land for some time, and afterwards *Daniel* and his brothers had agreed to make a division of the land between them, and to pay their sisters their proportions in money.   And further, in connection with this proof, the defendants proposed to prove, that an agreement to this effect was reduced to writing and signed by *Daniel* and his brethren; and in pursuance thereof, an artist was employed in the fall of 1814, to make partition according to the terms of the same: that such partition was made, by running and marking the lines thereof on the ground; and that *Daniel* took possession of the purpart and allotment of the land, which, by their agreement, fell to him; and his brothers their respective portions.   In connection, also, with the submission of *Daniel Bavington* and his brothers and sisters of all matters in variance between them, embracing the decree of the Orphans' Court, and their respective rights to the land in dispute, to the final award and arbitrament of *David Shields, Daniel Moore, Thomas McGiffin* and *Thomas McKennan,* and the award of the arbitrators. The plaintiffs' counsel objected to this testimony, and read the affidavits of *Ruth Thomas, John Bavington, David Crawford, John Malone, Robert Patterson, John McDonald* and *Andrew Kerr,* filed in the Orphans' Court, to prove that objections were made to the making of the decree, and were passed upon by the Court.   They also called *Daniel Bavington* a witness, who said, that the written agreement referred to by the defendants, and offered to be given in evidence, was read in court by *Mr. Jennings,* who was counsel for some of the heirs of *John Bavington,* deceased; but when, or whether at the time the Orphans' Court decreed the land to him, witness cannot recollect.   He further says, that *Mr. Jennings* was employed by *Backhouse* and *Peterson,* husbands of two of the daughters—was not employed by witness—understood by his pleading that *Mr. Jennings* was employed for all against him.

*Judge Mercer,* being called, further stated, that he had an impression on his mind, that at the time the decree aforesaid of the Orphans' Court was made, that all the matters and things proposed by the defendants to be given in evidence, were examined into and heard, but cannot be positive.

The Court rejected the evidence of the agreement between the heirs, as offered to be proved by *James Stevenson,* to which the defendants took an exception.

(Thomas Bavington and others *v.* James Clarke.)

The defendants then read the following submission :and award, viz:

Washington county, ss. In the Common Pleas, No. 21, September Term, 1819.

*Daniel Bavington* v. *Thomas* and *Henry Bavington, C. B. Peterson* and wife *Elizabeth* late *Bavington, Thomas Backhouse* and wife *Sarah* late *Bavington, Ruth Bavington, Thomas Burns* and wife *Catharine* late *Bavington, Nancy Hartford, Polly, John,* and *Charles Bavington.*

Amicable Action.

In order to adjust, and finally settle the disputes of the parties, and the claims of each, either as they relate to real estate or personal accounts, it is hereby agreed and stipulated, that all matters at variance between the parties, touching either real or personal estate or accounts, shall be and are hereby submitted to the decision and determination of *Thomas McGiffin, Th. M. T. McKennan, David Shields* and *Daniel Moore,* or a majority of them; the meeting to take place on the premises, on Monday the 12th day of July next. This agreement, and the decision which may be made thereupon to be final and conclusive between the parties, May 12th, 1819.

*Parker Campbell,*
attorney for plaintiffs.
*P. Doddridge* and *J. Pentecost*
for defendants.

July 13th, 1819. It is hereby further explained, that by the power above conferred, the parties meant, and now agree, that they will be bound by any decree the arbitrators may make ; whether that be for a sale of the estate real or any part thereof, or for a division among some of the members of the family, of the real estate, and charging the parties to whom parts of the real estate may be set-off and allotted; charging those who may receive parts of the real estate with certain sums, such as the arbitrators may award in favor of those who may receive no part of the real estate.

*P. Doddridge & J. Pentecost,*
for defendants.
*Daniel Bavington.*

Award.—In pursuance of the annexed agreement, we have proceeded to the hearing of the parties, their witnesses and counsel; and after due examination, we do award and decree as follows:

1. The plaintiff is not entitled in law or equity, to the property under the decree of the Orphans' Court, under which he claims.

2. He is not entitled in law or equity under the agreement

(Thomas Bavington and others *v.* James Clarke.)

signed by the principal members of the heirs, and dated the 15th day of February, year unknown.

3. We find that the plaintiff is entitled to the sum of $1000 for extra labor and service, in relation to the estate, and for moneys paid by him on account of the estate of his deceased father; and we do adjudge and award, that the same be deducted from the aggregate valuation of the estate, to be in full of all claim and charges against the estate, and each member of the family.

4. We find, that the tract of land whereupon the mill, mansion house and other improvements are erected, containing 425 acres, strict measure, may be divided into three shares, which is accordingly so done, in the following manner, to wit, 120 acres, strict measure, (as per diagram No. 1, hereto annexed,) whereupon the mill is erected, and the house where *Daniel* resides, to be one share, or portion; which is selected by, and awarded to *Daniel,* the oldest son, and is appraised at $6000; and we do hereby award and decree that the said *Daniel Bavington* pay his mother, *Ruth Bavington,* widow and relict of *John Bavington,* dec'd. in semi-annual instalments, $100 per year, for and during her natural life; to be recovered by distress, if not punctually paid; and to be and remain a lien and incumbrance upon his portion of the land and estate.   That the said *Daniel* shall pay to *Nancy Harsford,* late *Bavington,* the sum of $924 91, in the following manner, to wit, $616 61 on or before the first day of April next, and the remaining $308 30 within thirty days from and after the death of *Ruth Bavington,* aforesaid.   The said payment to be a lien until satisfaction shall be entered therefor of record.   We further award and decree, that the said *Daniel* shall pay unto *John Bavington* $924 91: $616 61 on or before the 1st April, 1820, and the remaining $308 30 within thirty days from and after the death of *Ruth Bavington,* widow as aforesaid.   The said payments to be a lien as aforesaid.   We do further award and decree that the said *Daniel* shall pay the heirs and legal representatives of *Margaret Wright,* late *Bavington,* deceased, $924 91: $616 61 on or before the 1st April, 1820, and the remaining $308 30 within thirty days after the death of the said *Ruth Bavington.* The said payments to remain as a lien upon the property as aforesaid.   We do further award and decree that the said *Daniel* shall pay unto *C. B. Peterson* and *Elizabeth* his wife, the sum of $375 43: $250 29 on or before the 1st April, 1820, and $125 14 within thirty days after the death of *Ruth Bavington,* widow as aforesaid.   The said payments to operate as a lien on the land as aforesaid.

5. We do find, that *Daniel Bavington* the plaintiff is entitled by purchase to the share of *Charles Bavington,* in the above described land, belonging to their father *J. Bavington;* and do award and decree the same to him.

(Thomas Bavington and others *v.* James Clarke.)

6. We do further award and decree, that the portion of the said tract of land which is embraced in survey No. 2, hereto annexed, containing 117 acres, strict measure, be set apart, and is adjudged to *Henry Bavington;* (*Thomas Backhouse* and *Thomas Bavington* becoming securities for the payment of the dower and distributary shares charged thereon,) and we do value the same at $2700, and do decree, that the said *Henry* pay to *Ruth Bavington* $54 per annum, during her natural life; to be paid semi-annually; recoverable by distress, and to remain a charge or lien upon the land. We do further award, that the said *Ruth Bavington* be permitted to reside in the mansion house, if she thinks proper, during her natural life. And we do award and decree, that the said *Henry* shall pay to *Thomas Backhouse* and *Sarah* his wife, late *Bavington,* or the lawful heirs of the said *Sarah* $924 91: $616 61, on or before the first day of April, 1820, and the remaining $308 30 within thirty days after the death of the said *Ruth Bavington.* And we do further award and decree, that the said *Henry* pay unto *Thomas Burns* and wife *Catharine,* or the lawful heirs of the said *Catharine,* $850 18: $566 79 on or before the 1st April, 1820, and $283 39 within thirty days after the death of the said *Ruth Bavington.* The said payments to remain as a lien or charge upon the said portion of the land.

7. We further award and decree the remaining portion of the said land, which is embraced in survey No. 3. hereto annexed, containing 188 acres strict measure, to *Thomas Bavington;* and do value the same at $2124; and direct that the said *Thomas* pay to *Ruth Bavington,* widow and relict as aforesaid, the sum of $42 48 per annum, to be paid semi-annually, recoverable by distress, and to remain a lien or charge upon the said portion of land. And we do further award and decree, that the said *Thomas* pay unto his sister *Polly* $924 91: $616 61 on or before the 1st April 1820, and $308 30 within thirty days from and after the death of *Ruth Bavington,* widow as aforesaid. The said payments to remain as a lien and charge upon the said portion of land, until they are satisfied. We do further award and decree, that the said *Thomas* pay unto *C. B. Peterson* and *Elizabeth* his wife, or the legal heirs of the said *Elizabeth,* $199 46: $132 99 on or before the 1st April, 1820, and $66 49 within thirty days after the death of the said *Ruth Bavington.* The said payments to remain a lien as aforesaid. We do further award and decree, that the said *Thomas* pay to *Thomas Burns* and wife *Catharine,* or the legal heirs of the said *Catharine,* $74 42: $49 82 on or before the 1st April, 1820, and $24 90 within thirty days after the death of the said *Ruth.* The said payment to remain a lien as aforesaid.

8. We do further award and decree unto *C. B. Peterson* and *Elizabeth* his wife, and to the legal heirs of the said *Elizabeth,*

(Thomas Bavington and others *v.* James Clarke.)

100 acres of land, more or less, belonging to the estate of *John Bavingtan,* deceased, situate in the state of Ohio, being lot No. 2, in the 1st Quarter, 9th Township, 8th Range of the tract appropriated for satisfying warrants for military services; which we value at $350; which together with the sums to be paid them by *Daniel* and *Thomas,* constitute their share of $924 91.

9. The costs to be divided equally among all the heirs.

10. We do further award and decree, that all the accounts between each and every member of the *Bavington* family have been adjusted and settled; and that no one member has any claim against any of the others, further than mentioned in the above award or decree. *Daniel* is entitled to credit for any monies he has paid *Mrs. Hartford,* on account of her share in the estate since May, 1814. In testimony whereof we have hereunto set our hands and seals this 14th day of July, 1819.

|  |  |
|---|---|
| *Th. McGiffin,* | [Seal.] |
| *Daniel Moore,* | [Seal.] |
| *D. Shields,* | [Seal.] |
| *Th. M. T. McKennan,* | [Seal.] |

The defendants then gave some parol evidence to prove, that, at the time of the sheriff's sale, *James Clarke* knew of this proceeding between the heirs; and then said, that he was "buying a lawsuit."

The defendant's counsel then asked the Court to charge the jury in favor of the defendant, on the following points, viz.

1. That the recognizance entered into by *Daniel Bavington* and the securities is defective, and therefore void.

2. That as *Daniel Bavington* never entered into a valid recognizance, the decree is therefore invalid, and gave no title.

3. If this position is correct, that *Daniel Bavington* had only an individual interest; it was therefore competent for him and his brothers and sisters to make the arrangement for partition, notwithstanding the judgment had attached in the meantime.

4. That said partition having been made, the judgment must attach to the share that had been assigned to *Daniel,* and more especially, as the judgment creditor, by his levy on that share, and the description, recognized the partition which had been made, and also by giving in evidence to the jury of inquest, the list of liens, created by the award of the arbitrators appointed to make the partition.

5. That although the recognizance may not be so defective as to be void, yet *Defrance,* the judgment creditor, has, by his proceeding on his judgment, recognized the partition, by taking that part assigned to *Daniel,* and describing it as set forth by the arbitrators, and by his exhibiting the award and the liens created to the inquest.

16

(Thomas Bavington and others *v.* James Clarke)

6. That the purchaser at sheriff's sale being fully apprised of all this, as appears by his declaration, that the title was not good, all equity is taken away from him; and he is left in no better situation than the judgment creditor stood in.

Which instruction the Court refused to give, but on all the points gave their opinion in favor of the plaintiff. To which opinion of the Court the defendant's counsel excepted.

A verdict and judgment were rendered for the plaintiff.

The opinion of the Court, rejecting the parol evidence mentioned in the bill of exception, and their charge to the jury were assigned for error.

*Kennedy* for plaintiff in error.

It did not certainly appear whether the agreement between the heirs of *John Bavington* had been passed upon by the Orphans' Court, when they confirmed the land to *Daniel;* it should therefore have been submitted to the jury as a matter of fact, whether it had been or not. This agreement would have established the fact, that the land was awarded and confirmed to *Daniel,* in trust for himself and all the other heirs. The subsequent submission and award was a declaration of that trust, and a division of the trust estate. Nor was such division either an actual or a legal fraud upon the judgment creditor of *Daniel Bavington;* for it was a proceeding and result which any one of the heirs of *John Bavington,* dec'd. might have instituted and produced: and that which one may be compelled to do, by a legal proceeding, he may do amicably and by consent: and when done, all are bound by it. *Coke Lit.* 172. a. *Zouch ex dem* v. *Parsons,* 3 *Burrows,* 1801.

The lien of the judgment would attach to that part of the land which, by the award, was allotted to *Daniel.* *Jackson* v. *Pierce,* 10 *John. R.* 414.

The judgment creditor recognized the validity of the partition between the heirs, by levying on the part allotted to *Daniel;* and by exhibiting to the inquest, which condemned the land, the liens which were created by that amicable partition.

*McDonald* for defendant in error.

The adjudication to *Daniel Bavington* was made upon the fullest hearing before the Orphans' Court, and after the date of the agreement between *Daniel* and the other heirs. Could this adjudication be avoided or affected by a prior agreement between the parties in interest, when that effect is to operate upon a stranger to the agreement, who purchased afterwards a title founded upon such adjudication of a Court of record. In contemplation of law,

(Thomas Bavington and others *v.* James Clarke.)

the Orphans' Court must have been satisfied, that the agreement was rescinded: at all events it is enough to know that that Court had power to pass upon its effect, and they did so.   *Thompson* v. *Tolmie,* 2 *Peters' U. S. Rep.* 162.   *Perkens* v. *Fairfield,* 11 *Mass.* 227.

The decree was made to *Daniel Bavington,* upon his entering into a recognizance conditioned for the payment to the other heirs, of their share: this he did do.   The act of assembly requires no set form of words to make a recognizance: a mere acknowledgment of indebtedness to the other heirs, entered of record, and which is a lien upon the land, is sufficient.   That it should be taken in the name of the Commonwealth is not required; nor does the practice of our Courts generally sanction such a mode.   *Welsh* v. *Vanbebber,* 4 *Yeates,* 559.

This case is, in a few words, this: that there is a regular proceeding in the Orphans' Court, by which the title to the land is vested absolutely in *Daniel Bavington;* after which a judgment is obtained against him, which is a lien upon the land.   And it is contended by the plaintiff in error, that the person thus vested with the legal title, subject to this lien, has it in his power to make an arrangement with his brothers and sisters, by which the judgment creditor is deprived of his vested rights.

As to the knowledge of *Clarke* it does not affect the question; for it was a knowledge that a transaction had occurred, without his participation, adverse to his rights, and by which he was not bound.   His recognition of the division would not destroy his rights; any thing he did was for the benefit of the defendants, by levying on and selling a part only of the land.

The opinion of the Court was delivered by

Huston, J.—Although when land is purchased, the deed is made to one man, it may, nevertheless, be held in whole or in part in trust for another: so where the eldest son takes the land of an intestate in the Orphans' Court at the appraisement, although by the record it may appear to be his, yet it may, as to certain parts of it, be in trust for others:—and this trust, when in writing, may be proved:—and to admit the proof, does not impugn the sanctity or validity of the decree of the Orphans' Court: it is consistent with, and founded on the decree.   It is also possible that one person who has purchased lands, and got his deed, and given bonds, may find himself entirely unable to pay those bonds; and the creditor vendor, knowing this, may make an entirely new contract, and take back the whole or part of the lands, and release the whole or part of the debt.   So where one of the children has taken land under a decree of the Orphans' Court, and holds it, subject to the payment of what is due to his brothers and sisters,

(Thomas Bavington and others *v.* James Clarke.)

those brothers and sisters finding him unable to pay, may enter into an agreement, to release him from his present situation, may themselves agree to take land instead of money, and specify how much land they are to get: or it may be agreed to submit the whole matter to arbitrators, as in this case, with full power to rescind or vary, &c.; this also does not impugn the decree which gave the land to the eldest son; but admitting that to be good and valid, it substitutes a new arrangement instead of it.

There is nothing contrary to morality or law in any of these two supposed cases. The eldest son a few years ago took lands at a price, which from decrease in value, ruined all who had been unfortunate enough to be the eldest sons, and to take the estate of their fathers at the appraised value. In some cases, the brothers and sisters pressed their demands, and never received half the amount:—but in some cases, they forgave part, and in some made a new valuation and partition by consent: and where this was done, it has justly been considered an act of brotherly kindness, honorable to the parties.

The only possible objection to an arrangement of this kind must come from some creditor, who alleges injury to himself, from this second arrangement.

'In the present case, the first agreement is material on this account;—for if it is fully proved that the eldest son never had a right to the whole, no one but an innocent purchaser from him, without notice of the trust, could pretend to hold the whole land in opposition to the trust. *Daniel*, by this, never owned the whole land:—he was, at the very time the whole was decreed to him, only tenant in common with others;—and a judgment against him bound only his interest.

A judgment against a tenant in common does not prevent partition. The tenant against whom the judgment is, or any other of the tenants in common, may sue out a writ of partition, and proceed to have the share of each set out in severalty. The judgment in such case binds the part set out for the one against whom it is entered, and it binds no more. So also in case of a mortgage on an undivided share. 10 *John.* 414, 417, *Jackson* v. *Pierce*.

And so it is if partition is made without suit, provided it is fair. Where any person, even an infant, does that which by law he is compelled to do, that is, makes *equal partition*, he is bound. 3 *Burrows*, 1801.

Whether this whole proceeding was known to *Clarke*, and how far his declarations, and the fact that he made his levy on the precise part allotted to *Daniel*, will make or not make him a purchaser with notice, we forbear to intimate. The evidence of the defendant below was rejected:—we are of opinion that evidence is admissible; not to invalidate the proceedings of the Orphans'

(Thomas Bavington and others *v.* James Clarke.)

Court, but to prove the rights and interests of the parties under those proceedings:—or to prove that the rights acquired under them, were, by the parties in interest, afterwards varied ; perhaps that the trust which existed at the time *Daniel* took, was afterwards carried into effect.

Much was said as to the validity or invalidity of the recognizance ; perhaps it is not necessary to decide on that point.   Certainly if there was no recognizance, the land never vested in *Daniel.*   This being the very words and spirit of the act of assembly.   If it bound the land, still if the second arrangement by the heirs among themselves is valid, that second arrangement put an end to the recognizance:—and the validity of the arrangement by the arbitrators, will not depend on the validity of the recognizance.   If it was valid, all the heirs could by consent make a new contract which discharged it:—if it was invalid the interest of the heirs was still in each of them, and they could submit the whole matter to the arbitrators.

If the fact of *Daniel* having the whole allotted to him was known and acted on by *Clarke*, he must have known it was allotted subject to paying the other heirs, and that the amount due each of them would be preferred to any judgment he could obtain, or had obtained, except as to *Daniel's* own portion perhaps.

It would be improper to go further.   When this testimony rejected, is received, the facts and circumstances may be very different from what they now appear to be, and it would only embarrass the cause to proceed to give an opinion on a case, existing in our imagination, and which may differ essentially from this cause when tried again.