WILLIAM W. WILDEY *v.* MOSES H. BONNEY'S LESSEE.

1. PARTITION: AMONG CO-PARCENERS MAY BE BY PAROL.—A parol agreement between co-parceners, for the partition of lands held by them as such, when carried out by the parties taking possession in severalty, according to the agreement, is valid and effectual to conclude the rights of the others against those holding in severalty. See 14 Wend. 619; 4 Johns. R. 202; 5 Ohio R. 243; 2 Richardson, 627.

2. EVIDENCE; JUDICIAL PROCEEDING COMPETENT AS PART OF RES GESTÆ.—Although a judicial proceeding for the partition of land among co-parceners may be void for uncertainty in the designation of the parcels allotted to the several parties, yet if it be referred to, in a parol agreement made between them to divide the land, it may be introduced in evidence as a private writing, being a part of the *res gestæ.*

In error from the Circuit Court of Yazoo county. Hon. E. G. Henry, judge.

John Doe, on the demise of Moses H. Bonney, brought his action of ejectment in the court below against the plaintiff in error, for the recovery of certain premises alleged to be in possession of the plaintiff in error.

The plaintiff proved in support of his title, that the premises were originally purchased from the government of the United States by William Hall, deceased, under whom both parties claim title. That Hall afterwards died, leaving five heirs, among whom were A. C. Hall and Rhoda Pierce, to whom said premises and his other estate descended. He then proved that a judgment was rendered in the Circuit Court of Yazoo county, in favor of Marsh, Cothran, and Neill, against said A. C. Hall, and that an execution was issued thereon, and levied on the premises in controversy, as the property of said A. C. Hall; and that the premises were sold thereunder in 1848, and previous to the commencement of the suit, and purchased by his lessor, Bonney. Possession of the land was admitted to be in Wildey.

The defendant offered in evidence the record of the proceedings of the Probate Court of Yazoo county, upon an application made for a partition of the lands of said William Hall, among his heirs, from which it appeared that the commissioners appointed to make

the partition had divided the land of said William Hall into five lots, which were respectively numbered from one to five, inclusive; that these lots were, by agreement among the other heirs and A. C. Hall, acting for himself and Rhoda Pierce, divided amongst them, as follows:—"A. C. Hall agrees to take for his own share and Mrs. Pierce's, lots numbered two and five, by being paid two hundred and fifty dollars;" and the remaining lots were each respectively selected by one of the other heirs. This report was confirmed by the Probate Court. The land in controversy was lot No. 2, mentioned in the report of the commissioners, and so marked on the map returned by them as a part of their report. Plaintiff objected to the introduction of the evidence on the ground that the said report was void for uncertainty on its face, in not showing which of the lots numbered two and five was set off to A. C. Hall, and which to Rhoda Pierce. This objection was sustained by the court, and the evidence excluded.

The defendant then offered in evidence the said record, and in connection therewith, and in aid of its interpretation and to remove the ambiguity objected to in said report, the written agreement between the heirs, in relation to the division, and which is referred to in the report of the commissioners. But this evidence, on objection of plaintiff, was excluded by the court. This agreement was dated in December, 1843, and signed and sealed by all the heirs except Rhoda Pierce, and merely stated the terms upon which the parties were willing that the commissioners should make the division, and which are the same as stated in their report.

The defendant, for the same purpose, offered in evidence the deposition of R. M. Mabin, in which he stated, "that lot No. 2, in commissioners' report, is the land in controversy, and lies in the Yazoo valley; that lot No. 5, in same report, is situated four or five miles from this lot, and in the hills; that the $250 awarded by the commissioners in their report, was intended to make lot No. 5 equal in value to lot No. 2, and the other lots; that said $250 was paid to said A. C. Hall for that purpose, and that he took said lot No. 5 in the division, and that Mrs. Pierce took lot No. 2; that said A. C. Hall has ever since said partition and payment to him occupied said lot No. 5 as his home. He further

stated, that Mrs. Rhoda Pierce and Marcus Pierce were married before the said division, and until 1844, when Marcus Pierce died.

This deposition, upon objection of plaintiff, was excluded from the jury, so far as it was offered or intended in aid of said record, or to remove the ambiguity or uncertainty therein; but was permitted to go to the jury for every other purpose.

The defendant then offered all the evidence which he had theretofore offered, and which had been excluded by the court, for the purpose of proving a parol partition of the lands of Wm. Hall, among his heirs, and that lot No. 2, aforesaid, had thereby been allotted to Mrs. Rhoda Pierce; he also, at the same time and for the same purpose, offered to prove, by competent evidence, that the several heirs of Wm. Hall, after said partition, had severally taken and occupied the portions of the land allotted to them in the report of said commissioners, and that said possession, in severalty, had continued up to the present time, except that A. C. Hall, in addition to occupying lot No. 5, as his residence, had also occupied lot No. 2, under a deed from Marcus Pierce, conveying to him all his interest in the lands of Wm. Hall, deceased; said conveyance being made by M. Pierce, of his interest in right of his wife, and during his lifetime. That said Rhoda Pierce, after the death of her husband in 1844, sold and conveyed the lot No. 2, to the defendant and Wm. Hall, reciting in the deed, that it was her share of the lands of Wm. Hall, deceased, which had been allotted to her; that she never, however, had actual possession of it.

All the evidence thus offered for the last mentioned purpose, upon objection of the plaintiff, was excluded, and the defendant filed his bill of exceptions, excepting to all of the foregoing ruling of the court in excluding evidence offered by him.

The plaintiff had verdict and judgment for one-fifth undivided interest in the premises in controversy. From this judgment the defendant sued out this writ of error.

*R. S. Holt*, for plaintiff in error.

1. We think the agreement, from being referred to by the commissioners as the basis of their division, may be regarded as incor-

porated with, and in some sense, forming part of their report. Hence, they used language in the report proper, which required elucidation from the collateral agreement. In this view, the agreement would certainly be admissible.

2. But we insist that all the proof offered on this point should have been received, on the principle, that where a question arises as to the meaning of an instrument, where indefinite expressions are used capable of being satisfied in more ways than one, proof of independent facts, collateral to the instrument, may be received to ascertain the true meaning. 6 Eng. Com. Law R. 242, (where the subject is fully discussed by Bailey, J.,) 1 Mason, R. 10, 11, 19; 4 Dessaus. Eq. R. 211. See also authorities fully collected in note 938, 4 Phil. Ev. and notes, p. 1358; 19 Johns. R. 317.

In the case cited from Eng. Com. Law R. 246, Mr. Justice Bailey says, "The evidence here is not to produce a construction against the direct and natural meaning of the words, nor to control a provision which was distinct and accurately described; but because there is an ambiguity upon the face of the instrument—because an indefinite expression is used capable of being satisfied in more ways than one; and I look to the state of the property at the time—to the estate and interest the settlor had—and the situation in which she stood with regard to the property she was settling, to see whether that estate, or interest, or situation, would assist us in judging what was her meaning by that indefinite expression."

Judge Spencer, in the case cited from Johns. R. 317, says, that "Where a question arises as to the general intention of the parties, concerning which the instrument is not decisive, proof of independent facts, collateral to the instrument, may be properly admitted," and he cites numerous authorities. Equally pointed is the decision of the court in 5 Wheat. R. 326.

Indeed, it is a very ancient and fully approved principle, that a contract or other instrument may be construed and illustrated by the light of surrounding circumstances. And there exists the same reasons for the application of this principle to records as to other instruments.

3. It is urged, in the third place, that the court erred in exclud-

ing from the jury the proof offered of a partition of the land *by deed*.

No technical form is essential to such a deed. The agreement of the parties offered in evidence is under seal, and refers to the first division reported by the commissioners, as that which received their assent, subject only to one or two specific modifications. The first report is, by this reference, in effect, made part of the agreement, and with the agreement, places the true intention of the parties beyond question.

It is true that Mrs. Pierce did not sign the agreement, and that some who did sign it, did so on behalf of themselves and others. But it is equally true, that the testimony offered proved that the parties who did not sign in proper person, had either before authorized the act of those who assumed to represent them, or afterwards acquiesced in and ratified it. The fact that the possession of the parties has been ever since in accordance with the partition thus made, admits of no other inference. Equally significant is the fact that the report of the commissioners, founded on this agreement, and carrying it into effect, was excepted to by none of the parties, nor have any of them ever attempted to have the decree of the court founded on this report, reversed or annulled.

That it was made by the authority of Mrs. Pierce, or was ratified by her, is conclusively proven by the fact that she subsequently sold and conveyed lot No. 2, to Lawrence Wildey and Wm. Hall.

A. C. Hall, through whom Bonney claims, not only signed the agreement, but he received the owelty money given him by the agreement to make lot No. 5, which is assigned to him, equal to the other lots. We insist that while others do not complain, he, and Bonney claiming through him, cannot repudiate an agreement which he executed; and are in law estopped from doing so by the pecuniary benefit received by him under it, and never repayed.

4. In the fourth place, we insist that the court erred in rejecting the proof of a partition by parol, and a possession of the parties in accordance with it.

If the proof was technically insufficient to prove either a judicial partition or a partition by deed, it most clearly proved a parol partition, and a corresponding possession by the parties. That such

a partition is good in law, is well established; 14 Wend. R. 619; 4 Johns. R. 202; 13 Penn. R. (1 Harris,) 376, and this, even if one of the parties is a *feme covert.* Ib. 430; *Slice* v. *Derrick,* 2 Rich. 627.

This rule or doctrine does not conflict with the Statute of Frauds, because partition is not a transfer of title, but only a severance of a joint possession.

On these various grounds we think the judgment should be reversed.

*Geo. S. Yerger,* on the same side.

*Geo. B. Wilkinson,* for defendant in error.

This case is now before this court for the third time; three verdicts having been found in favor of defendant in error, in the court below.

1. This court has already decided, in the second opinion delivered in this cause, that the division made under the order of the Probate Court was void. See second opinion. If void, Hall was entitled, as heir, to one undivided fifth part of the land in controversy, and Bonney claims under Hall, as purchaser at sheriff's sale.

2. Mabin's testimony was incompetent, under the rule that "parol evidence is inadmissible to contradict or vary the terms of a written instrument." 1 Greenleaf, 360; 2 Phillips, Ev. 350; 2 Starkie, Ev. 544.

But further, it could not, (if admitted,) have made valid that which was void; nor could it have vested in Wildy a *legal* title which he could set up to defeat this action of ejectment. We therefore think this judgment must be affirmed.

HANDY, J., delivered the opinion of the court.

This case has been in this court on two previous occasions, and it now depends upon questions different from those formerly presented. The attitude in which it was last presented appears by the report of it in 28 Miss. Rep. 710.

When the case was last tried in the court below, after the plain-

tiff's lessor had offered, in support of his title, the evidence ad-
duced on the trial, as stated in the last report of the case, the
defendant offered in evidence, First, the report of the commissioners
appointed by the Probate Court to make partition of the lands of
William Hall, made to and confirmed by the Probate Court; by
which it appeared, among other things, that "Archibald C. Hall,"
(one of the heirs,) "agreed to take for his own share and Mrs.
Pierce's," (another of the heirs,) "lots number two and five, by
being paid two hundred and fifty dollars," and that the commis-
sioners made the allotment accordingly. This evidence was ob-
jected to by the plaintiff, and the objection was sustained, on the
ground that the partition between A. C. Hall and Mrs. Pierce
was void, for uncertainty.

The defendant then offered in evidence, in connexion with the
above report, and to remove its ambiguity, a written agreement,
signed and sealed by all the heirs of William Hall, except Mrs.
Pierce, ratifying the allotment made by the commissioners, and
stating that Archibald C. Hall "took the ridge farm as his share;"
and also offered the deposition of Robert Mabin, one of the heirs,
to prove that the land in controversy is lot number two, as divided
by the commissioners, and that it lies in the Yazoo valley, and
that lot number five, referred to in their report, lies in the hills;
that the two hundred and fifty dollars were awarded by the com-
missioners, in order to make lot number five equal in value to lot
number two, and the other lots, that sum being paid to A. C. Hall
for that purpose, as he had taken lot number five in the partition,
and has ever since occupied it as his home, and that Mrs. Pierce
took lot number two; that Mrs. Pierce was then married, and her
husband, Marcus Pierce, died in 1844. This testimony was ob-
jected to, as incompetent for the purpose for which it was offered,
and the objection was sustained.

The defendant then offered all the above-stated evidence, for the
purpose of showing that there had been a parol partition of the
lands of William Hall, including the land in controversy, among
his heirs, and also at the same time offered legal evidence for the
same purpose, to prove, that after that partition, the several heirs
took possession of the portions allotted to them in the commis-

sioners' report, and have held possession thereof ever since, except that after the partition A. C. Hall, besides claiming and occupying lot number five, held possession of lot number two, under a deed from Marcus Pierce, dated in June, 1841, conveying to A. C. Hall, all his interest in all the lands of William Hall, during the life of Pierce, and in right of his wife, and that he so held possession of lot number two, until Pierce's death, in 1844; that Mrs. Pierce was never in actual possession of lot number two, but that she sold and conveyed it to two of the other heirs, after her husband's death.

To all this evidence the plaintiff objected, and the objection was sustained, and the defendant excepted to these several rulings of the court. And the verdict and judgment being for the plaintiff, the defendant brings the case here by writ of error.

The merits of the case depend upon the question, whether the evidence offered in behalf of the defendant below was competent and sufficient to show such a partition of the lots numbered two and five, as would divest the title of Archibald C. Hall to the former of these parcels of land, being the one in controversy in this suit. And in determining this question, we do not consider it necessary to decide whether each part of the evidence, as it was offered, was competent for the purpose for which it was stated to be adduced. For if the whole of it together was competent to show a divestiture of the title of Acrhibald C. Hall, under whom the plaintiff's lessor claimed, the several parts of it were necessarily admissible. We will, therefore, consider whether the whole evidence, as offered, was competent to show a valid partition of the land.

It was held in the previous decision, that the partition of the two lots of land in question, between A. C. Hall and Mrs. Pierce, was void, for uncertainty. It was not intended to hold that this partition was void otherwise than as a judicial proceeding; for the matter was then presented for consideration only as a judicial partition, and not in the view in which it is now presented.

The report and proceedings of the commissioners were here offered, as connected with the subsequent agreement made between the parties, and their conduct in relation to the land, showing that

a parol partition was made between them.   The report and plat of the lands, though not valid as a judicial partition, were necessary to explain the acts of the parties with reference to them, and if those proceedings were sanctioned by the parties interested, and they afterwards made them the basis upon which they divided the lands among themselves, such ratification would render these proceedings valid as a part of the agreement for partition, and they would be competent evidence, as private writings, forming part of the *res gestæ*.

The subsequent acts of the parties tend clearly to show that the partition intended to be made by the commissioners, was carried out by the parties.   The written agreement made by them in December, 1843, has direct reference to it, and shows what portion of the land was agreed to be allotted to A. C. Hall; and the testimony of Mabin shows still more explicitly, that the partition, as made by the commissioners, was adopted by the heirs, and that all the uncertainty in the report was cured by the private agreement of the parties, Mrs. Pierce taking lot number two, as described in the plat and report, and A. C. Hall taking lot number five, and each party taking possession of his own portion.   And the additional evidence offered by the defendant corroborates the same view.

It is therefore plain, that the parties treated the partition intended to be made by the commissioners as valid, and that they cured any insufficiency in it by their own private action and agreement; and that this was clearly established by the evidence offered in behalf of the defendant.

The only question then, upon which the competency of this evidence depends, is, whether it is competent to show a partition by parol, between coparceners or tenants in common.   And there can be no doubt but that such an agreement, when carried out by the parties taking possession in severalty, is valid, and effectual to conclude the rights of the others against the respective parties so holding in severalty.   *Corbin* v. *Jackson*, 14 Wend. 619; *Jackson* v. *Harder*, 4 Johns. R. 202; *Piatt* v. *Hubbell*, 5 Ohio Rep. 243; *Slice* v. *Derrick*, 2 Richardson, 627.

Treating the case, therefore, as one of parol partition, with pos-

session in severalty accompanying and following it, it is clear that all the evidence offered together by the defendant, to show such a partition, was competent, and should have been admitted.

But the written agreement of December, 1843, signed and sealed by A. C. Hall, taken in connection with the commissioners' report and plat of the land, as a mere written memorandum, shows substantially a partition by deed. That agreement, it is true, is executory; but the evidence subsequently offered shows that the terms therein stated were complied with; and it was clearly competent to show such compliance by parol evidence. This agreement and the action of the parties under it, would estop A. C. Hall from setting up any claim to other parts of the land in opposition to his election, especially when possession in severalty had passed in conformity to it, to the parties respectively, and had been continued and acquiesced in for a number of years; and any one claiming under A. C. Hall would also be estopped.

It is manifest, therefore, that the several parts of the evidence offered in behalf of the defendant, were erroneously ruled out.

The judgment is reversed, and the cause remanded for a new trial.