## JAMES PIPES VS. H. S. BUCKNER et al.

1. TENANTS IN COMMON: *Parol partition; when valid; effect thereof.*

    A parol agreement by tenants in common for a partition of lands between them, to own and occupy certain parts of the common property in severalty, followed by occupancy in pursuance of the parol agreement, is valid. And such an agreement will sever that tenancy and estop each from claiming title to, or interfering with the possession of the other. This right to sever the tenancy in common is not affected by the fact that the parol partition relates to two separate and distinct tracts of lands, not contiguous to each other.

2. SAME: *Effect of the judicial proceedings on the parol agreement.*

    The judicial proceedings were in furtherance of the preceding parol agreement resorted to from necessity. The payment of the assessments and the precedent and subsequent continuous and uninterrupted possession of the lands, as agreed on, constitute a valid partition between the parties, and the failure to execute the deed did not affect the rights of the parties.

APPEAL from the Chancery Court of *Adams* County.

Hon D. N. WALKER, Chancellor.

The facts sufficiently appear in the opinion of the court.

*A. H. Handy,* for appellant, contended :

1. That irrespective of the technical question of " parol partition," the agreement between James and Robert, which was in effect an agreement for division and possession with several ownership, as between them, when carried out by James paying the extra valuation, in equity and good conscience, estopped Robert from setting up title to "Franklin place," and that Buckner, who is asserting claim for him, stands in no better attitude that he could occupy. 2 Story Eq. Jur., § 885 ; Webster *v.* Skipwith, 26 Miss., 349 ; Natchez *v.* Vandervelde, 31 Miss., 722.

2. That although it is true, generally, when parties institute proceedings for a judicial partition of land held by them as coparceners, all collateral arrangements, and arrangements as to their rights, inconsistent with the scope of such proceedings, will be considered at an end by reason of the judicial proceeding. Yet

no rule of equity is more firmly settled, than that a judgment will never be permitted by a court of equity to be enforced according to its form, or to confer rights according to its form, when the same are in violation of a clear undertaking and purpose for which such judgment or proceeding was intended.   2 Story Eq. Jur. § 885; 26 Miss., 349; 31 Miss., 722.

3. That in the case at bar, no other of the coparceners claims, or is setting up any interest on account of these two plantations, and the sole question is, as to the rights of James and Robert in them ; that none of the heirs complain of the arrangement; that most of them were parties to it, and that they have all acquiesced and received the benefit of the money paid by James for excess in valuation, etc., and the arrangement would be binding on them even if they had made objection to it.   Lee v. Gardiner, 26 Miss., 521 ; Wilie v. Brooks, 45 id., 547 ; Kempe v. Pintard, 32 id., 330 ; Stevens v. Durrett, 49 id., 418.

*Wm. F. Mellen*, for appellees, contended :

1. That there was not an agreement for parol partition between James and Robert.   That the idea of parol partition was not present to the brothers at the time of the agreement; that it was an afterthought suggested by necessity to meet the necessities of this case.

2. That even if there had been such agreement, it was not valid, because, (*a.*) There was never a complete parol partition ; (*b.*) Because of the minors' interests, as was well known to the parties, no parol partition could be effectual.   There could be no proper possession in severalty.   Wildey v. Bonney, 31 Miss., 652 ; City of Natchez v. Vandervelde, id., 720 ; Corbin v. Jackson, 14 Wend., 619 ; Snively v. Luce, 1 Watts, 69 ; Buzzell v. Gallagher, 28 Wis., 678 ; Hazen v. Barnett, 50 Mo., 506 ; Slice v. Derrick, 2 Rich., 627 ; Jackson v. Harder, 4 Johns., 202.

3. That there was no valid agreement for any partition because there was no agreement to which all the heirs were parties.   Hill v. Meyers, 43 Penn. St., 170 ; McConnell et al. v. Carey et al., 48 id., 345.

4. That the judicial partition made was the only partition that,

under the law, could have been made between the parties in interest; that it is valid and conclusive; that as to the parties and their privies, it extinguished and annulled all parol agreements made prior thereto in reference to the title or possession of the plantations named therein; that it divested all titles as they had existed, and vested new titles according to the allotments.

5. That even if the judicial partition did not have the effect to extinguish and annul the oral agreement, yet it was the partition contemplated by the parties, it divested titles and vested new titles, just as it was expected to do, and left the exchange of titles to be made thereafter, just as the parties had agreed should be done. The titles acquired by the allotments were valid titles, as to all the brothers, because they had agreed that titles should be divested and new titles vested in this way, and these new titles exchanged before the agreement between James and Robert could be regarded as an executed agreement.

6. That the oral agreement between the brothers was an agreement for the conveyance of freehold estates from one to another, after certain titles should be divested and new titles vested, and therefore void.

7. That the agreement made between the brothers could not be enforced by a decree for specific performance, because: (a.) It was in reference to property in which they had not the exclusive title. (b.) It was too indefinite and uncertain to form the basis of a decree. (c.) It was in direct violation of the statute of frauds and other statutes of the state as to conveyances and freeholds. Purcell v. Miner, 4 Wall., 513; Brown on Stat. of Frauds, § 76. Not even does fraud afford any ground for relief in equity where the writing is wanting. Box v. Stanford, 13 S. & M., 93; 6 How. (Miss.), 364; 5 S. & M., 17; 7 id., 456; 8 id., 773. For the courts will not allow any exceptions to the statute. 8 S. & M., 680, 681; 9 id., 207; 42 Miss., 383; 25 id., 88; id., 724; Farley v. Stokes, Pars. Sel. Cas., 422; Parrish v. Koons, id., 80; Parkhurst v. Van Cortlandt, 1 Johns. Ch., 273; 48 Miss., 247.

8. That the agreement not being an executed parol partition,

did not in any sense create equities between the parties sufficient to warrant an invocation of the doctrine of equitable estoppel. Wood v. Griffin, 46 N. H., 237; Drew v. Kimball, 43 id., 282; Gove v. White, 20 Wis., 447; Hill v. Epley, 31 Penn. St., 334; 3 Washb. on Real Prop., 68 to 85; 2 Story's Eq. Jur., §§ 1533, 1553. Nor does the doctrine of estoppel apply where everything is equally known to both parties (Fletcher v. Holmes, 25 Ind., 469); nor where he who sets up another man's act or declaration has not himself been misled or deceived by such act or declaration, or had not the same means of knowledge as the other party. Hill v. Epley, 31 Penn. St., 334; Ormsby v. Ihmsen, 34 id., 472; Gray v. Bartlett, 20 Pick., 193; Jewett v. Miller, 10 N. Y., 406; Ferris v. Coover, 10 Cal., 589; Boggs v. Merced Mining Co., 14 id., 367; Glidden v. Strupler, 52 Penn. St., 405.

9. That the agreement cannot be sustained to the prejudice of the creditor's levy of execution, without doing violence to well settled rules and producing endless confusion in the jurisprudence of the state.

CAMPBELL, J., delivered the opinion of the court. ·

Lewis Pipes had eight plantations, and several children. He settled his children, or some of them, on these plantations, and among them Robert Pipes was placed on a plantation called "Anchorage," and James Pipes, another son, was permitted to occupy a plantation called "Franklin." It was the expectation of these sons, and no doubt the purpose of the father, that title to "Anchorage" would be vested in Robert, and to "Franklin" in James, by act of the father, but he died intestate, not having conveyed title to the sons, or either of them, and at the time of his death was the owner of the eight plantations spoken of. Other children of the intestate occupied other of these plantations in the same way, and with like expectation as Robert held "Anchorage" and James held "Franklin." Lewis Pipes died in July, 1868, and soon after his death it was mutually agreed

between his adult sons, four in number, including Robert and James, that neither should be disturbed in his possession of the plantation he occupied before a partition among all the heirs of all the plantations, and when, such general partition should be made, each of them, so far as it could be done by the consent and agreement of the others, should continue in his possession as then existing, and hold the land he then occupied as the ascertained one-seventh part of all of the lands of their deceased father, against his coheirs in fee; and it was expressly agreed, that if the "Franklin" place should, in the general partition by judicial proceedings rendered necessary by the fact that there were infant grandchildren of the intestate entitled to shares of the land, who could not enter into a valid agreement about it, be allotted to any of said brothers, James Pipes should, nevertheless, retain and hold it as his seventh part of his father's lands, in lieu of and exchange for the plantation that should be so allotted to him, and the other brothers should in like manner retain and hold as their own, severally, the plantations then in their possession. In pursuance of this manifest purpose of the brothers to secure to each the plantation he was on in December, 1868, the four brothers mentioned, and their sister, Rachel Marsh, filed their petition in the probate court for partition of the land descended from their deceased father, and in January, 1869, a decree for the appointment of commissioners to make partition as prayed for was had. In November, 1869, the report of the partition by the commissioners was filed, from which it appears that the "Franklin" plantation was allotted to Robert Pipes, and the "Anchorage" place to James Pipes, and Robert was required to pay $1,077 to Mrs. Rachel Marsh, for the greater value of "Franklin," and James was to pay $190.86 to Mrs. Marsh, for "Anchorage." After the report of the commissioners, and before its confirmation, James Pipes paid Mrs. Marsh the $1,077 assessed against "Franklin," and Robert paid her the $190.86 assessed against "Anchorage," and each continued in possession and use of the plantation he had before occupied, and held and

treated it as his own, in accordance with the parol agreement which had been made soon after the death of their father, and it was matter of notoriety in the vicinity that "Franklin" was the property of James Pipes, who used it in all respects as his own, as Robert used and possessed "Anchorage" as his, neither exercising any dominion or control over the plantation possessed by the other, but observing and regarding in all respects the agreement made as aforesaid, to that end. The report of the commissioners allotting as aforesaid was duly confirmed, and a decree made in accordance with it, in July, 1870. After the allotment by the commissioners, James and Robert Pipes, directed a deed to be drawn up for their mutual execution, to vest title of "Anchorage" in Robert, and of "Franklin" in James, and such a deed was drawn in January, 1870, but never executed, not from unwillingness, but from neglect. In this condition of things, and with James Pipes on the "Franklin" place, as before stated, and Robert in possession of "Anchorage," in February, 1871, H. S. Buckner recovered judgment against Robert Pipes, execution on which was levied on the "Franklin" plantation aforesaid, and it was about to be sold, when James Pipes, who was still in possession of it as before, exhibited his bill against Buckner, to restrain the sale on the state of facts presented above. The decree on final hearing was against James Pipes, and he appealed.

The foregoing statement of facts is a full and precise presentation of the case, as deduced from the pleadings and evidence, upon a laborious examination and careful consideration of the record, and the elaborate arguments of counsel upon the facts of the case, as well as the legal questions involved.

Upon the facts of this case, it is clear that Buckner, the judgment creditor of Robert Pipes, can assert only such right as his judgment debtor could to "Franklin" plantation, possessed at the date of the judgment by James Pipes, and the single question therefore is, whether there was a valid parol partition of "Franklin" and "Anchorage" between James and Robert Pipes, so as to preclude Robert in a court of equity from asserting any claim

to "Franklin." Many authorities announce the doctrine of the validity of a partition of land by tenants in common by parol agreement between them, to own and occupy certain parts of the common property in severalty, followed by occupancy in pursuance of the parol agreement. Agreement to divide, and occupancy in accordance with the agreement, are held to sever the tenancy and estop each from claiming title to, or interfering with the possession of the other, held according to the parol agreement.

This doctrine has been sanctioned in this state. Wildey v. Bonney's Lessee, 31 Miss., 644; Natchez v. Vandervelde et al., id., 707. It is not changed by the code of 1857, which has no effect upon it.

We are not disposed to extend this doctrine, but will apply it within the precise limits in which we find it.

The right to sever the tenancy in common and fix the rights of parties in severalty, to what was before in common, is not affected by the fact that the parol partition relates to two separate and distinct tracts of land not contiguous to each other. In the case of a single tract, or of several, it is but a severance of the joint possession which before is in common, and the same principle applies. The real difficulty in the application of the well settled doctrine of the validity of a parol partition to this case arises from the judicial allotment which fixed the title of "Anchorage" in James Pipes, and of "Franklin" in Robert Pipes. But for this, there could hardly be a question about it. Does the fact that judicial proceedings were resorted to for partition, participated in by James and Robert Pipes, which resulted as above, destroy the legal effect of the agreement between them, that whatever the result of the judicial allotment, James should have "Franklin," and Robert should have "Anchorage," and the continued occupancy of each in accordance with the agreement? And does the fact that the parties considered it necessary or expedient to have a deed of exchange mutually executed as to "Franklin" and "Anchorage" render invalid the partition result-

ing from their agreement and possession, if these amounted to a partition?

Both questions must be answered in the negative. The judicial proceeding was in furtherance of the preceding parol agreement between the brothers as to the plantations. It was resorted to from necessity, because of the disability of some of the tenants in common. It was but a means to an end, and that the removal of all legal difficulty from the way of the accomplishment of the agreement of the parties as to the ownership in severalty by James of "Franklin," and by others of their respective possessions as agreed on. The precedent parol agreement, the judicial proceeding in pursuance and fulfillment of it, the payment by James Pipes of the $1,077, directed in the allotment to be paid for equality between "Franklin" and the "Home" place allotted to Mrs. Marsh, and of the $190.86 by Robert on account of "Anchorage," and the precedent and subsequent continuous and uninterrupted possession and use by James of "Franklin," and by others of their places as agreed on, are to be viewed as parts of one whole, and constitute a valid partition between the parties, and the purpose of the parties, after the allotment, to have a deed of exchange, and their direction that it should be prepared for their execution, did not affect their several and respective rights as arising from what had occurred between them. The partition was valid as a parol partition, and Robert Pipes was precluded from any assertion of claim to "Franklin," as James was with reference to "Anchorage." It is not true that the agreement between the brothers before the resort to judicial proceedings was for an exchange of plantations, if the allotment should result contrary to their hopes. The agreement was that each should retain and hold, as his seventh part of the estate of the father, the plantation he was already in possession of in lieu or exchange, or as a substitute for any other place which might be allotted to him in the judicial proceeding. The only use of the word exchange is in the sense of substitution by the agreement of the parties of the plantation each was on, and was to have as his own for any other

which might by possibility be allotted by the commissioners, and does not involve the idea of a technical future exchange of plantations by mutual conveyance of title. There was no suggestion between the parties of any deed of exchange until after the allotment by commissioners. The parties evidently relied on their mutual agreement, which was to limit and control as between them the judicial allotment.

The decree is reversed, and decree will be entered here perpetually enjoining the execution of the judgment of Buckner as against " Franklin " plantation.