HENRY H. GAGE

*v.*

JOSIAH H. BISSELL *et al.*

*Filed at Ottawa January 25, 1887.*

1. PARTITION—*jurisdiction to settle conflicting titles.* The statute relating to partitions gives the court power to determine the rights of the several parties under their title, whether in the same chain of title or emanating from other sources, as they may be made to appear.

2. SAME—*parties—requisites of bill, as setting out the nature and extent of the various titles and interests involved.* The statute imperatively requires the complainant in a bill for the partition of land, to make all persons interested therein, parties, and by apt averments to disclose the nature and extent of their title or interests; and this is more especially so when conflicting rights are to be determined, incumbrances apportioned, or clouds upon titles removed, or the like relief is sought.

3. So a complainant seeking to set aside or impeach an adverse title, or to subordinate the same to his title, must state in his bill the nature of such adverse title, and the grounds of his right to equitable relief in regard thereto.

4. SAME—*of partition without settling conflicting titles.* While parties seeking the partition of land may have clouds upon their titles set aside, yet, upon failure of proof as to the invalidity of the adverse title sought to be impeached, they may dismiss their bill in so far as it seeks to set aside such adverse title, and still have partition, where no cross-bill is filed.

5. A bill for partition sought to have two tax deeds for the premises set aside as clouds upon the title. On the hearing, the complainant gave evidence showing title in himself and another, and the invalidity of one of the tax titles, and neither party offered any evidence as to such other tax title, whereupon the court allowed the complainant to dismiss his bill in so far as it sought to set aside that tax title, and the court set aside the first named tax title, and decreed a partition: *Held,* that there was no error in the ruling of the court in allowing the dismissal and decreeing a partition.

6. SAME—*partition by parol—whether binding upon the parties.* A parol partition of land between tenants in common, carried into effect by possession taken by each party of his share, is valid and binding on the parties thereto and those claiming under them.

7. EVIDENCE—*admission by the pleadings—bill to set aside a tax title, as an admission of title in the defendant.* A bill to set aside a tax deed for certain illegalities can not be construed as an admission of title in the defendant. At most it is only an admission that the defendant is claiming title

under a void deed, and will not relieve the defendant from proof of his title, if he claims title in bar of the relief sought.

8. SAME—*burden of proof.* On bill to set aside a deed as a cloud upon title, the burden of proof is upon the complainant to prove the allegations of his bill, and to show, by competent evidence, the invalidity of the deed attacked thereby.

APPEAL from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

Mr. AUGUSTUS N. GAGE, for the appellant.

Mr. JAMES R. MANN, for the appellee Hambright.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Appellee Hambright filed his bill in chancery, in the Superior Court of Cook county, against Josiah H. Bissell and Henry H. Gage, alleging that he and said Bissell were owners, as tenants in common, of lots 6 and 7, in block 22, in Ravenswood, Cook county, Illinois, and that said Gage claimed title to, or some right or interest in, said lots, by virtue of two tax deeds,—one dated April 4, 1873, and the other January 24, 1876; that said tax deeds were unlawfully made, and were illegal and void, and wholly unavailing, in law or in equity, to pass title to said lots, or either of them, or to give said Gage any right, title, interest or claim thereon, except for money paid at said tax sales, and taxes and assessments since paid by him on said lots. The bill alleges that no notice was served upon or given, as required by the constitution and laws of the State, upon either the owners or occupants of said lots, or either of them, etc., and prays, among other things, for partition as between himself and Bissell, in usual form; that the amount due Gage, for taxes, interest and penalties, be ascertained, and which complainant offered to pay; and that the said tax deeds be severally cancelled and set aside, and be held void and of no effect, and removed, etc., as a cloud upon the title of complainant and Bissell. Defendant Bissell answered, ad-

mitting the allegations of the bill. Defendant Gage answered, denying that complainant and Bissell were owners of the premises, and alleging that he (Gage) was owner in fee thereof, to which replication was filed.

At the hearing, complainant introduced an abstract of title, under the "Burnt Records act," showing *mesne* conveyances, which, *prima facie*, vested title in fee in complainant and Bissell to each of the lots. Complainant offered in evidence said tax deed of January 24, 1876, from Herman Lieb, county clerk of Cook county, to defendant Gage, together with certified copies of the tax certificate, and affidavits, notice, etc., upon which said deed was issued. There is no contention that this deed is valid, or that it was sufficient to convey title, and it will be unnecessary to examine into the defects in the precedent steps required by law, which render it void. No further evidence was offered by complainant. The defendant Gage offered in evidence certain deeds and abstracts of conveyances, hereafter mentioned, and rested. Neither party offered, or proposed to offer, any evidence as to the tax deed of April 4, 1873. Defendant Gage thereupon moved to dismiss the bill for want of equity, as against said tax deed, and complainant entered a cross-motion to dismiss so much of his bill as related to said deed and as sought to set it aside, etc. The court overruled the motion of Gage, and sustained the cross-motion, and so much of the bill was dismissed accordingly, and decree entered finding title in fee in complainant and Bissell, ordering partition in the usual form, and finding that the tax title of January 24, 1876, is a cloud on the title of said co-tenants, and is illegal, irregular and void; finding the amount due Gage for taxes, etc., to be $100.30; orders complainant to pay the same, with interest from date of decree, and upon payment thereof, enjoins Gage from asserting claim to said lots thereunder, and making said sum, with interest, a first lien on the premises. This appeal is prosecuted by defendant Gage, from that decree.

It is contended by appellant, that under the statute it was the duty of the court to determine his rights under the tax deed of April 4, 1873; that as the complainant, by his bill, had alleged its existence, and that appellant claimed title thereunder, the presumption was that it was valid and sufficient in law to pass the title to appellant, unless complainant established its invalidity. It is said, in argument, that, so far as the record shows, that title is absolutely good, and so long as it remains unimpeached the complainant has no right to relief; that "it was the right of the defendant to have the title evidenced by the deed of April 4, 1873, and his rights and interests thereunder determined." The cases of *Gage* v. *Reid*, 104 Ill. 509, *Hyde* v. *Heath*, 75 id. 381, and *Kilgour* v. *Crawford*, 51 id. 249, are relied upon by appellant in support of the position. The statute provides that every person having any interest in the premises sought to be partitioned, whether in possession or otherwise, and who is not a petitioner, shall be made defendant in the partition proceeding. Section 15 of the act provides: "The court shall ascertain and declare the rights, title and interest of all the parties to the suit, the petitioners as well as the defendants, and shall give judgment according to the rights of the parties." By section 39, the court is given power to remove clouds from titles; to investigate and determine all questions of conflicting or controverted titles; invest title by its decrees, and to apportion incumbrances, etc.

The statute is broad and comprehensive in its scope, and gave the court power to determine the rights of the several parties under their title, whether in the same chain of title or emanating from other sources, as they might be made to appear. It is made imperative upon the complainant to bring into court all persons interested in the estate, and by apt averments disclose the nature and extent of their title and interest,—and especially is this so where conflicting rights are to be determined, incumbrances apportioned, or clouds

from titles removed, or the like relief is sought. This is as far as the cases cited can be said to go upon the question here involved. In *Hyde* v. *Heath, supra*, the bill was brought to impeach and set aside a tax deed as a cloud on complainant's title, and it was there held that the burden of proof was upon the complainant to prove the allegations of his bill, and show the invalidity of the deed attacked thereby. In *Gage* v. *Reid, supra*, it was held that before a complainant would be entitled to relief upon bill filed to set aside or impeach a deed, or subordinate it to his own title, the bill must state the nature of such title, and the grounds of his right to equitable relief in regard thereto, upon the well recognized principle that a complainant can only have such relief as he entitles himself to by the allegations of his bill, supported by proof.

The bill, as originally filed, set out the tax deed in question as parcel of the title under which appellant claimed, and the defects therein, entitling complainant to the relief prayed for, were alleged, and it was sought to have the deed impeached, and removed as a cloud upon the title of complainant and his co-tenant. To have entitled complainant to that relief, he must have established its invalidity by competent evidence. If the bill had remained as originally filed, it is manifest that the court, in determining the rights of the parties, under the evidence introduced, would have found that complainant was not entitled to the relief sought, as to that deed,—that is, that he was not entitled to have the same removed as a cloud upon his title. No other decree could have been rendered. The bill and answer presented the issues, simply, and if the bill is to be taken as true against the complainant, the most it could be held to admit was, that defendant, Gage, was claiming title under a void deed. The defendant was in court, and undoubtedly had the right to show his title, and introduce any legitimate evidence to sustain it, and the court had full power and jurisdiction to determine his rights thereunder.

This he refused and neglected to do, and can not now be heard to complain.

It therefore follows, that appellant was in no way prejudiced by the dismissal of so much of the bill as related to this particular deed. The effect of the doctrine contended for would be, that co-tenants having the fee to land may not apply to a court of equity for partition unless they had the proof in hand to establish, affirmatively, the invalidity of every mere cloud which, of itself, could have no legal or equitable force, without loss of their estate. Such was not the intention of the legislature, and is not deducible from the decisions of courts any where.

It is next urged, that the court erred in finding title to the whole tracts in appellees, and ordering partition between them. It is claimed that the evidence introduced showed the title of the undivided one-half of said lots to have been in defendant, Gage. A brief reference to the title will render apparent the grounds for this contention.

It is conceded, that (as to the title under which this claim is made) Henry Rhines was the common source. The record shows that in 1839 said Rhines and wife conveyed to James Hickey thirty-nine and one-half acres of land, and that the lots in controversy are situated on and being part of the south half of said tract. James Hickey died intestate and without issue, August 29, 1840, leaving Mary Hickey, his widow, and brothers and sisters, surviving him. Next in the order of conveyances is the deed under which appellant claims title, made December 14, 1840, by Mary Hickey,—in which she describes herself as "relict of the late James Hickey, deceased, who died without children or the descendants of children,"— to John Leary, purporting to convey the undivided half of said tract of land to Leary. June 12, 1845, John Leary and wife conveyed, by warranty deed, the north half of said tract of land to Philip Rogers, who had in the meantime married Mary Hickey, widow of James Hickey, deceased. In Febru-

ary, 1854, a bill was filed in the Cook county court of common pleas, in the name of John Leary, against Mary Rogers, Philip Rogers, and the brothers and sisters, heirs-at-law with Mary, widow of James Hickey, deceased, alleging that the complainant and James Hickey were joint purchasers from said Henry Rhines, and paid each one-half of the purchase price therefor; that Leary and Hickey went into possession of the said thirty-nine and one-half-acre tract, and agreed upon a division thereof between them, said Leary to have the north half, and Hickey the south half thereof; that each took possession of his half in severalty; that Hickey died before making conveyance to Leary of his half, and praying that the defendants, representatives of James Hickey, deceased, convey the north half to him. On October 5, 1854, a decree was entered by that court finding the allegations of the bill true, and requiring the defendants to deed in thirty days, or in default thereof that the master convey. November 20, 1854, the master in chancery made a deed in accordance with the decree.

It is reasonably certain that Leary had continued in the occupancy of the north half of the tract until his deed to Philip Rogers, in 1845, and Mrs. Hickey continued in possession of the south half until her marriage with Rogers, and they continued in the possession of that half and the north half, after purchase from Leary, until Rogers' death, in A. D. 1856,—at least there is nothing in the record showing change of possession of either the north or south half until the sale of the north half, in 1845, by Leary to Rogers. Subsequently, the heirs of Rogers, and all the Hickey heirs, executed deeds to the grantors of Hambright and Bissell. The defendant, Gage, offered in evidence deeds from John Leary and wife to Martin Van Allen, dated July 30, 1874; from Martin Van-Allen and wife to Laura A. Van Allen, dated September 4, 1876, and from Laura A. Van Allen to Henry H. Gage, dated August 24, 1884. It is now contended, that as upon the

death of James Hickey one-half of the real estate of which he died seized would descend to Mary Hickey, his widow, and that as James Hickey only had, in equity, title to the south half of the tract purchased of Rhines, her deed of December 14, 1840, conveyed to Leary the undivided half of the south half of said tract, and that, in any event, that deed would convey title to the undivided half of all the interest therein of which James Hickey died seized.

Waiving the question of the admissibility of the deed from John Leary, we are unable to say, from this record, that the court was not justified in rendering the decree entered. That court undoubtedly entertained the view that the deed of Mary Hickey was intended to carry into effect the agreement between her late husband and Leary. If, as seems to be shown, Leary was a joint purchaser from Rhines, of the whole tract, and paid half of the purchase price therefor, it was but just and equitable that the one-half thereof should be conveyed to him, and her husband having failed in his lifetime to make the conveyance, the heir was, in equity, bound to do so. A parol partition between tenants in common, carried into effect by possession taken by each party of his share, will be valid and binding on the parties. *Shepard* v. *Rinks*, 78 Ill. 188; *Grimes* v. *Butts*, 65 id. 347.

Suppose that Hickey, after the parol partition between himself and Leary, had conveyed to Leary the undivided half of the whole premises, would it be contended that Leary thereby became the legal owner of the south half, and remained the equitable owner of the north half, unless there was something to manifest an intention to so convey? If it be true that James Hickey and Leary were tenants in common, in equity, in the premises purchased of Rhines, and made parol partition of the premises, and thereafter occupied in severalty, such parol partition would, as between themselves and their privies, be binding, and a court of equity would, upon proper bill filed, compel conveyance of the tract so partitioned, to

20—119 ILL.

Leary. Under such circumstances, a conveyance by Hickey, who held the legal title, to Leary, of the undivided moiety of the land, would, unless otherwise intended, relate to the partition, and, as between them and those holding under them, be held to convey the moiety partitioned and occupied in severalty by him. There are many circumstances strengthening this view. Over forty years had elapsed, at the time of the hearing, since the deed to Leary, without any change of possession or claim of title, so far as shown under it, to the south half of the tract of land mentioned. Thirty-four years had passed before the deed by Leary to Van Allen. It does not appear that there was any change of possession in consequence of that deed, and five years afterward, in 1845, we find Leary, by warranty deed, conveying the north half to Philip Rogers. It is not pretended he had any other title than that derived through the deed of December 14, 1840. Afterwards, to perfect the title, probably in consideration of his warranty, Leary, it is to be presumed, filed the bill in the court of common pleas, to compel the perfection of his title to the north half of the land, and compel conveyance by the Hickey heirs generally.

It will be unnecessary to go farther in this direction. We can not, in any view suggested, or that the most careful scrutiny of the record discloses, say that error has supervened in the rendition of this decree. The decree of the court making the amount found due Gage for taxes, etc., is in accord with the practice approved in former decisions of this court.

Perceiving, therefore, no error in the record of this case, the decree of the Superior Court is affirmed.

*Decree affirmed.*