BERRY et al. v. SEAWALL et al.    SHEPHERD v. SAME.    BAUGHMAN et al. v. SAME.    HAYS v. SAME.    ARBOGAST v. SAME.

(Circuit Court of Appeals, Sixth Circuit.    January 8, 1895.)

Nos. 154–158.

1. PARTITION BY PAROL—EFFECT ON LEGAL TITLE—ESTOPPEL.
   In Ohio, parol partition, consummated by possession and acquiescence under it for any less period than that which creates the bar of the statute of limitations, does not vest the legal title in severalty to the allotted shares; but such a partition, acquiesced in for any considerable length of time, will estop any person joining in it and accepting exclusive possession under it from asserting title or right to possession in violation of its terms.

2. EJECTMENT—ESTOPPEL AS DEFENSE.
   In ejectment, any conduct which estops one in pais to assert title or right of possession to the land is a good defense.

3. MARRIED WOMEN—PARTITION—ESTOPPEL.
   At common law, and in Ohio, where, until recent statutes, the rights and disabilities of married women were determined by the common law, a partition of land held in cotenancy by a married woman, made by her husband, and consented to by her, would bind her inheritance, if equal and fair, since she might by law be compelled to make such partition; and, accordingly, a married woman would be estopped to dispute a partition, fairly and equally made by her husband by parol, with her consent, and followed by long possession and acquiescence.

4. PRACTICE—SETTING ASIDE FINDING OF JURY.
   A motion to set aside a special finding of a jury is a motion for a new trial on the issue thereby decided, is addressed solely to the discretion of the trial court, and is not reviewable by writ of error.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

These were five actions for the recovery of real estate, consolidated and heard together.    A jury in the circuit court found a verdict for

the defendants, but the court, on motion, gave judgment for the plaintiffs non obstante veredicto. 55 Fed. 731. Defendants bring error.

These are five writs of error to review the same number of judgments in actions for the recovery of real estate, in which, the plaintiffs below being the same, and the questions of fact and law being identical, the court below ordered a consolidation under section 921, Rev. St. U. S. All the cases turned on the existence, validity, and effect in Ohio of a parol partition of lands by a married woman and her husband, followed by long possession and acquiescence in accordance therewith, as a defense to an action for recovery of real estate in a circuit court of the United States. The real estate in controversy in the different actions was the undivided one-third interest in lands all of which are embraced in a survey of 1,500 acres lying in Fayette and Union counties, Ohio, and in the Virginia military district, and which were conveyed by patent of the United States government, dated August 21, 1821, to the heirs and legal representatives of Col. William Greene Munford, in consideration of said Munford's services in the war of the Revolution. This patent was one of several issued in satisfaction of a United States land warrant for 6,666⅔ acres in favor of the same beneficiaries, directed to the surveyor of the Virginia military land district in Ohio. Patents for 1,500 acres in the aggregate were issued to Duncan McArthur for his services in locating and surveying the land. The other patents in satisfaction of the warrant were for 1,500 acres (the one in controversy), for 1,300 acres, for 1,299⅔ acres, for 437 acres, for 100 acres, for 410 acres, and for 120 acres. These, except the first, were dated August 22, 1822.

The original plaintiffs in the actions below, which were begun in 1877, were all of them descendants and heirs at law of Margaret Ann Sinclair, a granddaughter of William Greene Munford, and one of his heirs, when the patents above mentioned were issued. Subsequently a majority of the original plaintiffs conveyed all their interests to J. Hairston Seawall, and by consent of all parties the causes proceeded entitled as above. At the date of the issuance of the patents the heirs of William Greene Munford were in three branches, as follows: (1) Margaret Ann Sinclair, the daughter of a deceased son of William Greene Munford. She was born January 1, 1800, was married to John Sinclair, July 4, 1819, and died September 13, 1837. Her husband survived her, and did not die until August, 1875, shortly after which these suits were brought. (2) Robert H. Munford, Stanhope R. Munford, and Ann Munford, children of John Munford, a deceased son of William Greene Munford. (3) The children of Mary Stubblefield, daughter of William Greene Munford, and wife of Edward Stubblefield. It was conceded at the trial that Margaret Ann Sinclair, by the patent for 1,500 acres, became the owner in fee of an undivided one-third of the lands in controversy; that the plaintiffs were her lawful heirs or grantees; and that, unless the defendants could establish some fact by which she and her successors in title were barred from claiming the possession, the plaintiffs must have a verdict. The answer of the defendants, in addition to denying the title of the plaintiffs, pleaded the statute of limitations. On the trial the defendants sought to establish a parol partition, under which Margaret Sinclair and her husband parted with all interest in the 1,500-acre tract to her cotenants, and acquired the exclusive right in severalty to the 1,300-acre patent, which she and her husband subsequently, in 1824, sold by deed, with covenants of general warranty, for $1,300. There was no direct evidence of the partition, but the proof of its existence rested on circumstances, the chief of which were the warranty deed of Margaret Ann Sinclair for the 1,300-acre tract above referred to, and the quiet possession of the 1,500-acre tract by the plaintiffs and their grantors, the other cotenants of Margaret Ann Sinclair, for more than 50 years. The court below submitted to the jury several questions, the answers to which show the facts to be as already stated. The jury found that there had been a parol partition as claimed by defendants, and also found a general verdict for the defendants. The circuit court was of the opinion that the evidence was not sufficient to sustain the special finding that there had been a parol partition, and set it aside. The court was further of the opinion that a parol partition, though followed by possession in accordance with it, was not a valid partition in Ohio against a married woman, and constituted no defense to the plaintiffs'

case. Therefore, disregarding the finding of a parol partition as immaterial, the court, on motion, gave judgment in each case for the plaintiffs on the other special findings non obstante veredicto.

Mills Gardner and Humphrey Jones, for plaintiffs in error.

Matthews & Cleveland, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Counsel for the plaintiffs in error have devoted some time in argument and some space in their brief to a discussion of the action of the court in setting aside the finding of the jury that there had been a parol partition between Margaret Sinclair and her cotenants. This action of the court is not before us for review. A motion to set aside a special finding is a motion for a new trial on the issue thereby decided, and is addressed solely to the discretion of the trial court. It is not reviewable by writ of error. Railway Co. v. Struble, 109 U. S. 381, 3 Sup. Ct. 270. The only question for our consideration here is whether the action of the court below was right in giving judgment for the plaintiffs on the facts found by the jury, including the fact of a parol partition. If a parol partition, followed by a correspondent possession in severalty, was a good defense by the law of Ohio, then the fact that the evidence was insufficient to sustain a finding of such parol partition would not justify the court in ignoring the finding and giving judgment for plaintiffs; and, having submitted the question of fact as to parol partition to the jury, the court could only set aside the finding, and grant a new trial. The judgment under review therefore rests on the proposition that a parol partition between a married woman and her husband and her cotenants, followed by long correspondent possession, is not, in Ohio, a valid defense in an action by her or her heirs for the recovery of her original undivided interest in the part assigned under the partition to her cotenants. If this proposition cannot be supported, the judgment must be reversed; otherwise it must stand.

The statute of limitations was pleaded in these cases, but cannot avail the defendants. The statute in force at the time the possession of defendants and their grantors was begun is still in force and is as follows:

"An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within twenty-one years after the cause of such action accrues." Rev. St. Ohio, § 4977.

The saving clause of this statute, in force until after the bringing of these suits, was as follows:

"If a person entitled to commence such action is, at the time his right or title first descends or accrues, within the age of twenty-one years, a married woman, insane or imprisoned, such person may, after the expiration of twenty-one years from the time his right or title first descended or accrued, bring such action within ten years after such disability is removed, and at no time thereafter." Section 4978.

By virtue of the foregoing section, the statute did not run against Margaret Ann Sinclair during her life, because she was under

coverture from the time possession was taken in accordance with the partition until her death in 1837. When she died, the right of entry was in her husband as tenant by the curtesy, and the statute could not begin to run against her heirs until his death, in 1875, and the termination of his right of entry. Till then no right of entry or action accrued in favor of the heirs. Lessee of Ford v. Langel, 4 Ohio St. 465; Koltenbrock v. Cracraft, 36 Ohio St. 584; Carpenter v. Denoon, 29 Ohio St. 398; Holt v. Lamb, 17 Ohio St. 374.

The consideration of the question of the parol partition, which, for the purposes of our decision, must be assumed to have taken place between 1821 and 1824, as claimed by the defendants below, has been divided by counsel in argument into four heads: First. Does a parol partition of land in Ohio between all the cotenants, consummated by long possession and acquiescence short of the period for ripening of title by adverse possession under the statute of limitations, pass a legal title in severalty to the allottees in their respective shares? Second. Does it pass the legal title of a married woman who, as one of the cotenants, consented to and took part in the division and possession? Third. Even if it does not pass the legal title, will it estop in pais a cotenant who was sui juris to bring an action at law in courts of the United States to recover an undivided interest in the parts assigned in the partition to his other cotenants? Fourth. Will such an estoppel in pais prevail in Ohio against a cotenant who was a married woman, and joined with her husband in making such a partition?

It will be convenient for us to take the same course as counsel in our consideration of this case.

1. The effect of a parol partition consummated by possession and acquiescence upon the legal title to the land has never been directly decided in Ohio. The cotenants in this case are properly described as tenants in common, though the derivation of their title has in some aspects an analogy to that of coparceners at common law, and in others to joint tenants. As the right of survivorship, which was incident to joint tenancy, never existed in Ohio (Sergeant v. Steinberger, 2 Ohio, 305), there is now no substantial difference in that state between tenants in common, coparceners, and joint tenants. There never was much practical difference between the first two after the statutes of 31 & 32 Hen. VIII. gave the right of compulsory partition to a tenant in common as it had always existed at common law in favor of coparceners. It is true, coparceners were said to have unity of person, title, and possession, and tenants in common only unity of possession, but these nice and technical distinctions between the cotenancies which it required "the cunning learning" of the old common-law lawyer fully to understand and appreciate have long disappeared in Ohio. Tabler v. Wiseman, 2 Ohio St., 208; 4 Kent, Comm. 367. The claim of counsel for defendants below is founded on the mode of voluntary partition between tenants in common at common law by which legal title in severalty was vested in the former cotenants. "If two tenants in common be, and they make partition by parol, and execute the same in severalty by livery, this is good and sufficient in law." Co. Litt. 169a, § 250. The

argument is that, as possession is the modern equivalent of seisin, a parol partition, followed by correspondent possession, must be now good in law.   The chief objection to this contention is found in that clause of the statute of frauds which is now to be found in section 4198, Smith & B. Rev. St. Ohio, as follows:

"No lease, estate. or interest, either of freehold or term of years, or any uncertain interest of, in or out of lands, tenements, or hereditaments, shall be assigned, or granted, except by deed or note, in writing, signed by the party so assigning or granting the same, or his agent thereunto lawfully authorized by writing, or by act and operation of law."

It is contended by counsel for the defendants below that the change which takes place by a partition between tenants in common does not involve either the assignment or grant of any interest, or any uncertain interest of, in, and out of lands, as it is a mere fixing of boundaries between persons who, by different titles, have had possession of a tract of land in common because they did not know their limits.   Judge Ranney, speaking for the supreme court of Ohio in Tabler v. Wiseman, 2 Ohio St. 207, 211, says of partition between tenants in common:

"It operates upon the possession, dissolves the unity before existing, and enables each of the owners to know, possess, and enjoy his own share of the common estate in severalty.   This construction preserves all the analogies of the law, and is fully sustained by the adjudged cases.   It is well settled that such a proceeding does not decide title or create any new title.   It barely dissolves the tenancy in common, and leaves the title as it was, except to locate such rights as the parties may have, respectively, in distinct parts of the premises, and to extinguish it in all others."

Previous to partition, certainly each tenant in common has an interest in every foot of the undivided tract.   This interest is enjoyed by possession until partition.   The right to use and enjoy every part of the land is commensurate with the permanency of the estate, and endures as long, provided it is not terminated by partition.   When voluntary partition takes place, each party, by his act, transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part.   He does not derive title or estate from his cotenant by this transfer, so that either can be said to hold under the other, or to strengthen or weaken his title to his half by the strength or weakness of his cotenant's title, but we think it clear that there is a mutual transfer by each tenant to the other of his previous right of possession in the part assigned to the other.   This is an interest in land, and is within the letter of the statute of frauds.   It is, moreover, within the spirit of that statute.   The danger that fraud and perjury would unsettle the ownership of lands in disputes over the terms of a partition was not materially less than in those over the terms of a sale or exchange of lands in severalty.   Especially in this country and state, where there was no law of primogeniture, and the land descended equally to the children, there was very little land which must not be subjected to partition at some time; and the probability that such partitions, if their terms depended on verbal agreements, would involve the greatest uncertainty in the ownership of land, must have been ap-

parent to the legislature, and within the mischief which the statute was enacted to avoid. For similar reasons, we are of opinion that the change of ownership involved in partition is within the statute of deeds. The act of 1820 concerning deeds, which was in force when the partition in this case is said to have been agreed to and executed, began in this wise:

"That when any man or unmarried woman above the age of twenty-one years shall within this state execute a deed, mortgage or other instrument of writing, by which any lands, tenements or hereditaments lying and being within the same shall be conveyed in whole or in part, or otherwise affected or incumbered in law, such deed, mortgage or other instrument of writing shall be signed, sealed," etc.

The implication of this statute is that lands shall not be conveyed, in whole or in part, or otherwise affected or incumbered in law, except as therein prescribed. Clark v. Graham, 6 Wheat. 577, 579. The present statute (Smith & B. Rev. St. § 4106; 84 Ohio Laws, 132, 133), begins, "A deed, mortgage, lease of any estate or interest in real property shall be signed," etc. The two statutes are in pari materia, and cover the same subject-matter. A voluntary act of the owner of land, by which he creates or enlarges an irrevocable right to enjoy that land in another, affects the land, and transfers an interest in it within the meaning of this statute. It is true that the right or interest was only one of possession, but it was incident to a title which could only be described by reference to the entire land, and was as enduring as that title until partition. The purpose of the statute of deeds was to require permanent, solemn, and certain evidence of the change in ownership of real estate by voluntary act; and we think that, as partition is one of the most frequent methods of change in ownership by voluntary act, it was necessarily within the purpose of the statute. The recording acts were passed to give to the public exact evidence of the ownership of each piece of land in the community. Is it possible that the legislature did not intend that the public should know from that record whether land is owned by one person or a dozen? But it is said that the public may know of the partition by the visible possession. So they may know the ownership of all land. If the change of ownership caused by a partition is not within the deed statute, there would seem to be no authority for recording partition deeds at all. The recording act (section 4134, Smith & B. Rev. St.) provides for the recording of "deeds and instruments for the conveyance or incumbrance of any lands, tenements or hereditaments." It nowhere gives the county recorder specific authority to record partition deeds. Unless, therefore, a partition deed is a deed for the conveyance of land, or some interest in it, it would seem not to be within the description of those deeds whose record is provided for by law. If no provision is made for such record, then the innumerable records of partition deeds that have been made since the admission of Ohio as a state are nullities, and certified copies of them are not evidence in any court of justice. Ramsey v. Riley, 13 Ohio, 157; Johnston v. Haines, 2 Ohio, 55. This is the absurd conclusion we must reach if we once yield to the claim that a partition does not involve a transfer of interest in land within

the statute of frauds, the statute of deeds, and the recording act of Ohio.

It is not too much to say that the view that a parol partition in Ohio and possession for less than the period of the statute of limitations in accordance with its terms can vest legal title in severalty in the allotments is entirely contrary to the public policy of the state, as shown by its legislation and the decisions of its courts. In the case of Lessee of Lindsley v. Coats, 1 Ohio, 243, the action was ejectment. The defense was that the plaintiff and defendant had entered into a parol agreement for the exchange of lands in the same county, and had executed it, whereby defendant had come into possession of the land in controversy, and had remained in possession 16 years. The exchange had taken place in 1807. There was no statute of frauds in Ohio until 1810. The territorial law of Ohio adopted the common law of England and the statutes in aid thereof to 4 Jac. I. The defendant therefore relied on the principle of the common law, by which a parol exchange of lands situate in the same county was good if followed by possession under it. Shep. Touch. 294; Co. Litt. §§ 51, 52, 62. The supreme court, meeting this argument of defendant, said:

"It has been repeatedly determined by the courts of this state that they will adopt the principles of the common law as the rules of decision, so far only as those principles are adapted to our circumstances, state of society, and form of government. In no instance have the common-law modes of conveyance, as such, been adopted in this state; and long anterior to the settlement of this country they had given way to the comparatively modern mode of assurance by deeds of lease and release, bargain and sale, etc. There is nothing in our circumstances or state of society that would seem to require the adoption of a principle so pregnant with mischief as that the title to real estate might rest in and be evidenced by parol only. The policy of all our laws respecting lands is opposed to such a principle. Without attempting to enumerate the different acts of the legislature applicable to this subject, it may be said that from the first organization of the government to the present time it has been the policy of our laws that the title to real estate should be matter of record, subject to the inspection of every individual interested. The uniform custom of giving and receiving deeds upon all sales and transfers of real estate has been in accordance with this policy, and this is believed to be the first instance in which an attempt has been made to sustain a legal title to lands resting only on a parol contract. The policy of law, the custom of our country, the danger of perjury, and the many inconveniences that must necessarily result from the establishment of the principle contended for by the defendant, would, in the absence of all legislative provision upon the subject, require us to declare that the exchange claimed by the defendant did not transfer to him the legal title to the land in controversy; and that no contract evidenced only by parol, though accompanied with possession or livery of seisin, would vest in the purchaser a legal estate in or legal title to lands."

While this decision related to an exchange of lands, it declares with so much emphasis the policy of the state in respect of the necessity for written and recorded evidence of the ownership of land that we cannot think it doubtful what the same court would say, were it called upon to answer the question before us, of the effect of a parol partition, however completely consummated, on the legal title to the aparted land. While the supreme court of this state has never directly passed on the question, the cases in which the effect

of an executed parol partition has been considered leave little doubt that it is not regarded by that court as aparting the legal title. In Piatt v. Hubbell, 5 Ohio, 243, the court held that a parol partition, followed by possession and improvements in accordance with it, could not be disturbed in chancery. If the legal title had passed, certainly the partition needed the aid of no equitable principle to support it. The same implication arises from the case of Cummings v. Nutt, Wright (Ohio) 713, in which a court of chancery decreed the execution of releases in accordance with a parol partition executed by nine years' possession under it. If the allottees had acquired legal title in severalty, what was the necessity for, or right to have execution of deeds? In Bank v. Wallace, 45 Ohio St. 152, 168, 12 N. E. 439, Judge Dickman uses this language:

"There was no parol partition consummated by possession taken and held in accordance therewith, and so long acquiesced in as to call for the protection of a court of equity."

If a legal title passes by such a partition, it would hardly need the protection of a court of equity. There is nothing in the decision of Judge Sayler in Docktermann v. Elder (Com. Pl. Hamilton Co.) 27 Wkly. Law Bul. 195, upon which to base the inference that the legal title passes by parol partition and possession.

In Johnson v. Wilson, Willes, 248, 253, several tenants in common, wishing to make partition of their lands, covenanted by deed to pay the expenses of, and to abide by the award of, arbitrators. The arbitrators allotted the whole in severalty, but did not direct conveyances to vest the allotments in the respective owners. A suit was brought on the covenants against the allottees for not performing them, and the defense was that the arbitrators had not completed partition. It became important, therefore to determine whether by allotment without conveyance there had been a legal partition. Lord Chief Justice Willes discusses what was necessary to make a good partition at common law between tenants in common, and points out that livery of seisin was necessary, and continues:

"This was before the statute 29 Car. II., where a feoffment might be by parol; and the livery which is mentioned supposes that a feoffment is intended, which would then have been a proper conveyance. And therefore, as since the statute of Car. II. no conveyance can be but by deed, a proper conveyance is now become necessary, and for this reason the award is incomplete and not good."

This is the only litigated case in England which has been cited to the court where the question of the effect of the statute of frauds on such a partition has arisen. It is obvious that this construction of the statute was deemed so manifest that it was never again called in question. There are cases in equity in which parol partitions were recognized because there were equitable grounds for not disturbing them. As already explained, the exercise of equitable jurisdiction in such cases implies that legal title is not affected by such a partition. Ireland v. Rittle, 1 Atk. 541; Whaley v. Dawson, 2 Schoales & L. 367. The English law writers are of one accord upon the question. Bl. Comm. bk. 2, p. 324; 2 Cruise, Dig. 538; Alln. Partit. pp. 129, 130; Rob. Frauds, 285.

The Ohio statute of frauds was copied verbatim from the third section of the English statute of 29 Car. II. When it was adopted into the legislation of this state in 1810 (29 Ohio Laws, 218), it then had a fixed construction in England in respect of its bearing on parol partitions. It is hardly likely that courts of Ohio would give the statute a narrower scope than those of the mother country, from whose legislation it was borrowed.

The weight of authority in America, though there is a conflict, sustains the view that a parol partition is within the statute of frauds and the statute of deeds. In Porter v. Perkins, 5 Mass. 233, Chief Justice Parsons, speaking for the supreme judicial court of Massachusetts, in a case where the validity of a parol partition followed by long possession was in question, said: "Since the statute of frauds, partition by parol is void." See, also, Porter v. Hill, 9 Mass. 34, 35. The same view has been taken by the supreme court of Maine (Manufacturing Co. v. Heald, 5 Me. 384; Duncan v. Sylvester, 16 Me. 388; Chenery v. Dole, 39 Me. 162), and by the supreme court of New Hampshire (Dow v. Jewell, 18 N. H. 340, 353; Wood v. Griffin, 46 N. H. 231, 237; Ballou v. Hale, 47 N. H. 347), and the opinion of Chief Justice Parsons is cited in all these cases. In Vermont it is held that by a parol partition, followed by possession sufficiently long to raise the bar of the statute, the interest of the allottees in their respective shares ripens into a legal title in severalty, but that partition with possession short of the period of limitation is not binding in law on the cotenants. Booth v. Adams, 11 Vt. 156; Pope v. Henry, 24 Vt. 560; Johnson v. Goodwin, 27 Vt. 288. The necessary result of the Vermont cases is the same as in the Massachusetts, Maine, and New Hampshire cases, that parol partition and possession short of the period of limitation do not vest the legal title. The supreme court of New Jersey has held that a parol partition between tenants in common is within the statute of frauds. Den ex dem. Woodhull v. Longstreet, 18 N. J. Law, 405; Lloyd v. Conover, 25 N. J. Law, 47. The opinion of Chief Justice Hornblower in Woodhull v. Longstreet is the most satisfactory discussion of the subject contained in all the books, and, after a review of all the authorities, points out with telling force the objections to a modern recognition of so loose, dangerous, and archaic a method of creating a legal muniment of title as that by a parol partition and possession. In Delaware, North Carolina, Kentucky, and California, parol partitions are held to be within the statute of frauds. McCall v. Reybold, 1 Har. (Del.) 150; Medlin v. Steele, 75 N. C. 154; Anders v. Anders, 2 Dev. 529; McPherson v. Seguine, 3 Dev. 153; Duncan v. Duncan, 93 Ky. 37, 18 S. W. 1022; White v. O'Bannon, 86 Ky. 93, 5 S. W. 346; Gates v. Salmon, 46 Cal. 362. The supreme court of South Carolina holds that a parol partition is within the statute of frauds, but that long possession thereunder will be such a part performance as to take the case out of the statute in equity, and will constitute a good defense to a bill for a new partition. Rountree v. Lane, 32 S. C. 160, 10 S. E. 941; Kennemore v. Kennemore, 26 S. C. 251, 1 S. E. 881; Goodhue v. Barnwell, Rice, Eq. 198; Jones v. Reeves, 6 Rich. Law, 132. The cases of Haughabaugh v. Honald, 3 Brev. 97,

and Slice v. Derrick, 2 Rich. Law, 627, did not require the expression of such an opinion, but the judges seem to have considered that a parol partition might be good at law on the authority of the New York cases hereafter to be considered. However this may be, the later authorities above cited are, of course, controlling.

In Alabama, it is held that a parol partition followed by possession short of the period of the statute of limitation was not a good defense to an action of ejectment, but that in equity, such a partition, attended by possession, would be enforced and confirmed. Yarbrough v. Avant, 66 Ala. 526. In Georgia and Mississippi it is permissible under a code to plead equitable defenses to actions at law, and, though it is a matter of some doubt, it is probable that in these states a parol partition is regarded as within the statute of frauds. In Welchel v. Thompson, 39 Ga. 559, the action was for a partition. The defense was that there had been a previous parol partition. The trial court charged that it was no defense unless possession had continued for seven years, which was the period of limitation for the ripening of title by adverse possession fixed by statute. The ruling was reversed on the ground that possession for less than the statutory period was a part performance of the contract, and constituted an equitable title, and a defense to the action. In Hamilton v. Phillips, 83 Ga. 293, 9 S. E. 606, the action was ejectment. A parol partition, with possession under it continued for 25 years, was held a good defense. Of course, in such a case, the possession for so long a time would have ripened into a legal title. In Natchez v. Vandervelde, 31 Miss. 707, which was a bill for the specific performance of a parol partition accompanied by possession, a decree was entered confirming the partition. As already pointed out, this would have been entirely unnecessary, had the partition and possession vested a legal title. See, also, Pipes v. Buckner, 51 Miss. 848; Wildey v. Bonney's Lessee, 31 Miss. 644. What has been said of Georgia and Mississippi is true also of West Virginia. Frederick v. Frederick, 31 W. Va. 566, 8 S. E. 295; Patterson v. Martin, 33 W. Va. 494, 10 S. E. 817. In Missouri, Illinois, Wisconsin, Indiana, and Texas, it is held that a parol partition, followed by possession, gives to the allottees an equitable title in their respective shares, but that the legal title is held by all in common. Le Bourgeoise v. Blank, 8 Mo. App. 434; Bompart v. Roderman, 24 Mo. 398; Hazen v. Barnett, 50 Mo. 506; Nave v. Smith, 95 Mo. 596, 8 S. W. 796; Sontag v. Bigelow, 142 Ill. 143, 31 N. E. 674; Gage v. Bissell, 119 Ill. 298, 10 N. E. 238; Shepard v. Rinks, 78 Ill. 188; Grimes v. Butts, 65 Ill. 347; Tomlin v. Hilyard, 43 Ill. 300; Manly v. Pettee, 38 Ill. 131; Buzzell v. Gallagher, 28 Wis. 680; Eaton v. Tallmadge, 24 Wis. 217; Bruce v. Osgood, 113 Ind. 360, 14 N. E. 563; Savage v. Lee, 101 Ind. 514; Hauk v. McComas, 98 Ind. 460; Bumgardner v. Edwards, 85 Ind. 117; Moore v. Kerr, 46 Ind. 468; Aycock v. Kimbrough, 71 Tex. 330, 12 S. W. 71; Wardlow v. Miller, 69 Tex. 395, 6 S. W. 292; Stuart v. Baker, 17 Tex. 419; Houston v. Sneed, 15 Tex. 307. In Indiana and Texas it is expressly held that the statute of frauds does not apply to parol partitions, but that nothing but an equitable title passes by partition and possession. In Texas the conclusion that a parol parti-

tion is not within the statute of frauds is based on the difference between the language of the English and Texas statutes of frauds. In Connecticut, Maryland, and Iowa are to be found cases in which parties to a parol partition, followed by possession and improvements in accordance with its terms, have been held estopped in equity to repudiate it, and have been required by decree to perfect it (Brown v. Wheeler, 17 Conn. 345; Hardy v. Summers, 10 Gill & J. 319; Mahon v. Cooley, 36 Iowa, 479), but no one of these cases affirms that by such a partition and possession short of the limitation period the legal title in severalty vests in the allottees. The fact is that there are only three states where such a doctrine does prevail. Those are New York, Pennsylvania, and Virginia. It will be seen that the question is probably an open one in Virginia. The doctrine had its beginning in a decision of Chancellor, then Chief Justice, Kent, in the case of Duncan v. Harder, 4 Johns. 202. In that case—which was an action of ejectment—he said:

"A parol partition, carried into effect by possession taken according to it, will be sufficient to sever the possession, as between tenants in common, whose titles are distinct, and where the only object of the division is to ascertain the separate possession of each."

The decision has been followed in New York in Jackson v. Vosburgh, 9 Johns. 270; Jackson v. Long, 7 Wend. 170; Ryerss v. Wheeler, 25 Wend. 434; Baker v. Lorillard, 4 N. Y. 257; Wood v. Fleet, 36 N. Y. 499; and Taylor v. Millard, 118 N. Y. 245, 23 N. E. 376. It will be observed that in the passage quoted above Chief Justice Kent makes no reference whatever to the statute of frauds, which in New York is even more comprehensive than the English statute, and gives no reason why it did not render invalid parol partitions. Not until the decision of Wood v. Fleet (decided in 1867) was any attempt made by the court of appeals of New York to reconcile the validity at law of a parol partition with the statute of frauds, and then recourse was had to the doctrine of part performance in equity. By that time, however, the doctrine laid down by Chief Justice Kent in the early years of the state, and followed without question by subsequent judges, had become a rule of property, and the principle of stare decisis prevented a departure from it. Freem. Coten. § 298. In Pennsylvania, where there is no administration of equity jurisprudence except through courts of law, parol partitions, followed by possession, were upheld at law on the equitable ground of part performance and estoppel. Ebert v. Wood, 1 Bin. 216; Bavington v. Clarke, 2 Pen. & W. 115. In Gratz v. Gratz, 4 Rawle, 410, it was held that a parol partition was within the statute of frauds, and void; but in subsequent cases this was not followed. Calhoun v. Hays, 8 Watts & S. 127; McMahan v. McMahan, 13 Pa. St. 380; Darlington's Appropriation, Id. 430; McConnell v. Carey, 48 Pa. St. 348; Williard v. Williard, 56 Pa. St. 127; Mellon v. Reed, 114 Pa. St. 647, 8 Atl. 227; and McKnight v. Bell, 135 Pa. St. 358, 19 Atl. 1036. In the last case Gratz v. Gratz is expressly overruled, and it is distinctly declared that a parol partition of lands in Pennsylvania, followed by possession in accordance with it, vests the title in severalty, and gives not a mere equitable right, but one recognized

and enforced at law. In Virginia, the special court of appeals, in Coles v. Wooding, 2 Pat. & H. 189, held that by parol partition, followed by long possession, the allottees became seised in severalty. See, also, Bryan v. Stump, 8 Grat. 241. In Bolling v. Teel, 76 Va. 487, referring to the mode of partition at common law by parol agreement and livery of seisin, the judge says:

"Whether this rule of the common law is now changed, and mutual conveyances are necessary under the statute of frauds and perjuries, is a controverted question. Judge Lomax and Professor Minor concur in the opinion that coparceners may still make partition by parol without deed. 2 Minor, Inst. 488. The special court of appeals, in Coles v. Wooding, 2 Pat. & H. 189, laid down the same doctrine. My brethren take the same view. It must be admitted, however, that there are many respectable opposing authorities. This case does not call for an express decision of that question."

From this it would seem that the question is not definitely settled in Virginia, though the probability is that the New York theory will be adopted, should occasion arise.

The result of a careful examination of all the foregoing cases is that by the great weight of authority in this country a parol partition, consummated by possession and acquiescence under it for any less period than that which creates the bar of the statute of limitations, does not vest the legal title in severalty to the allotted shares, but that such a partition, acquiesced in for any considerable length of time, will estop any person joining in it and accepting exclusive possession under it from asserting title or right to possession in violation of its terms.

2. In view of this conclusion, it becomes unnecessary to discuss whether, even if a parol partition could vest legal title as between partitioners who were sui juris, it would nevertheless be void as against a married woman under the statute of Ohio prescribing the mode by which she must convey the legal title to her lands.

3. The action below was an action for the recovery of real estate under the Code of Ohio. In the state courts, of course, it would be permissible to make equitable defenses, but in the United States court the same rules must prevail as in the action of ejectment at common law. The supreme court of the United States has decided in two cases that, while equitable estoppel or estoppel in pais will not constitute a good title upon which to found ejectment, it will constitute a good defense to the action, because, even at law, such a ground is recognized as a valid reason for denying the right of possession to one against whom it may justly be urged. In Kirk v. Hamilton, 102 U. S. 68, it was held a good defense to an action of ejectment that the plaintiff, without objection, permitted the defendant, who thought he had a good title by judicial sale, to improve the property, and occupy it for some years, even though the sale was void against the plaintiff, the former owner, and the then holder of the legal title. In Dickerson v. Colgrove, 100 U. S. 578, land in Michigan descended to a brother living in California and a sister in Michigan. The sister and her husband sold the whole of the land with covenants of general warranty. The purchaser, afterwards learning of the brother's interest, wrote him concerning it. The brother wrote the sister to tell the purchaser to fear nothing from him, that he

never intended to claim the land. The purchaser thereupon sold with general warranty. Subsequently the brother sued in ejectment. He was held estopped by his conduct to assert his right to possession.

The right of the defendants in ejectment to defeat recovery by showing an estoppel in pais is not denied by counsel for plaintiffs below, but it is claimed that there was nothing before the circuit court tending to establish such a defense, and this for two reasons: First, it is said that the facts disclosed would not work an estoppel against a person sui juris; and, second, that Margaret Sinclair, being a feme covert at the time of the alleged parol partition, and from that time to her death, could not, by any conduct, however fraudulent, create against herself an estoppel which would divest her of her real estate.

The evidence which was admitted by the court below tended to show that after the alleged partition Margaret Sinclair and her husband sold for $1,300, by deed with covenants of general warranty, the 1,300 acres in which they had, before the partition, but an undivided one-third interest. The evidence also tended to show that one branch of her former cotenants had sold in fee simple, nearly, if not quite, all of the 1,500-acre tract in controversy with covenants of general warranty, and that from the time of the partition down to Margaret Sinclair's death, the grantees under this latter conveyance had undisturbed occupancy. If Margaret Sinclair had been a feme sole, it would be difficult to state a clearer case of estoppel in pais. By entering into a parol partition she said, as strongly and emphatically as conduct could say anything, that she did not intend thereafter to claim any interest in the shares of land assigned in the partition to her cotenants, and she made this representation irrevocable by taking to her exclusive benefit the part assigned to her, and selling it in its entirety to another. Relying on her consent to the partition, and her active participation in appropriating its fruits, her cotenants made themselves liable under covenants of general warranty to their grantees, and for the 13 years remaining to her of life there was nothing said or done to disturb the confidence which her cotenants had justly reposed in the permanency of the partition. If this conduct in a person sui juris would not create estoppel in pais, it is difficult to conceive conduct which would. Said Mr. Justice Swayne in Dickerson v. Colgrove:

"The law upon the subject is well settled. The vital principle is that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked."

The case at bar, on its facts, cannot be distinguished from that of Dickerson v. Colgrove, except in that Margaret Sinclair was under disability of coverture. Parol partition, followed by long possession, furnishes frequent occasion for the proper application of the prin-

ciples of estoppel in pais. The consent to a partition is necessarily the plainest invitation to all concerned to treat the share assigned as the several property of the respective allottees; and sales of the same by the respective allottees under general warranty, and the investment of labor and money in substantial improvements, are the usual result, and create all the necessary elements, of the estoppel. In Dickerson v. Colgrove, supra, Mr. Justice Swayne, as authority for the proposition that estoppel in pais is a proper defense in ejectment, cites Brown v. Wheeler, 17 Conn. 345, 353. That case was one of parol partition of inherited lands between a widow and two sons of a decedent. Possession was taken in accordance with the division, and continued for many years. Then one of the sons conveyed his own share to a stranger, and also an undivided interest in his mother's share. In ejectment by the stranger against the widow he was held estopped by the conduct of his grantor to dispute the partition. In answer to the objection, that the defense of estoppel in pais could not be made at law, the supreme court of Connecticut uses language which Mr. Justice Swayne quotes as follows (Dickerson v. Colgrove, 100 U. S. 582):

"This is certainly not the common law. Littleton says: And so a man can see one thing in this case: that a man shall be estopped by matter of fact, though there be no writing, by deed or otherwise. Lord Coke, commenting hereon, gives an instance of estoppel by matter in fact,—this very case of partition. Co. Litt. 352. § 667. And such an award has been held sufficient to estop a party against whom ejectment was brought. Doe d. Morris v. Rosser, 3 East, 15."

Reference has already been made, in the discussion of the effect of parol partition upon the legal title, to the very great number of other cases in which it is held that such a partition, consummated and acquiesced in for any considerable time, estops those holding it from asserting title or right of possession to the contrary. We think, therefore, that as against a person sui juris there would be, on the facts disclosed in this case, no difficulty in upholding the partition on principles of estoppel.

4. We come now to a most difficult question, and that is whether Margaret Sinclair's coverture renders the doctrine of estoppel in pais wholly inapplicable to this case. In 1824, when the partition is said to have taken place, the disabilities of married women in Ohio were exactly as they were at common law, except that there was no mode of conveying her estate or barring dower by levying fines. Instead of fines, early in the history of the state a statute was enacted enabling a wife to convey her real estate or to bar her dower by joining with her husband in a deed executed as hereafter shown. The act of 1820, which was the third act on the subject, was in force at the time of the partition. It provided as follows:

"Sec. 2. That when a husband and wife (she being eighteen years old or upwards), shall within this state execute any deed, mortgage or other instrument of writing, for the conveyance or incumbrance of the estate of the wife, or her right of dower to any lands, tenements or hereditaments whatsoever, such deed, mortgage or other instrument of writing shall be signed and sealed by the husband and wife,"

—And acknowledged before two witnesses, and a judge of the common pleas or justice of the peace, who should examine the wife

separate and apart from her husband, and make known and explain the contents of the instrument to her, and, if she declared that she had acknowledged and still acknowledged the signing and sealing as of her own free will and accord, and without fear or coercion of her husband, should certify the same, then the deed would be valid in law. Chase's St. 1139. The third section made all deeds executed out of the state valid in law if executed either according to the law of the state where executed or according to the law of Ohio. Another section provided for the execution by a married woman of a power of attorney to convey her estate by deed. It is important to bear in mind, that this was an enabling act, and gave to married women a power they did not have at the common law. In Glenn v. Bank, 8 Ohio, 80, Judge Grimke, speaking for the supreme court of the state with reference to the change from the levying of a fine at common law to this mode of barring dower, said that they would not "voluntarily apply any very nice or technical rules in the construction of a statute which is made in furtherance of, rather than in derogation of, the rights of married women." It was an act that related to the transfer of the legal title of the interest of married women in real estate. It impliedly prohibited the transfer of such title in any other way; but it was not, in any other sense, a restriction on her power to deal with her property. If she had power to make a binding executory contract to sell her property at the common law, there was nothing in the statute to prevent her doing so. The reason why she could not make such a contract in Ohio in 1824 was because she was under the same disabilities in that respect as she was at common law. To determine, therefore, the legal effect or binding character of the act or conduct of a feme covert in 1824, in Ohio, other than the conveyance of the legal title to her land, reference must be had to the principles of the common law, and to those special modes of relief which had their rise in courts of equity to soften the rigor of the fiction by which at common law the legal identity or existence of the feme covert was lost in that of her husband. In Phillips v. Graves, 20 Ohio St. 371, the question was whether a woman had charged her real estate in equity, and it was objected that the statute of deeds prevented her affecting or charging her real estate except in the mode prescribed therein. To this Judge McIlvaine answered:

"But we may observe that the only office of the statute referred to is to prescribe the mode, and the only mode, in which the legal title to lands and tenements in this state may be transferred or otherwise affected by act or deed of the owner. It treats only of legal evidences of title or interests in land. The same mode, substantially, is prescribed for men and unmarried women and wives. But in neither case does the statute affect the power of a court of chancery to charge equities upon lands and tenements, or attempt to define what may or may not be an equity chargeable upon real estate." Page 390.

When, therefore, we find reiterated in Ohio decisions the statement that a married woman cannot divest herself of title to her real estate, and cannot bind herself in respect thereto, or in any way affect her real estate except in the mode prescribed in the statute of deeds, we must understand that this is not because of the statute,

but that it is a general statement of the disabilities of a married woman with respect to her property at common law, and that the statute of deeds created an exception to the rigorous common-law rule; and, while it must be strictly complied with, to secure the effect provided, it was nevertheless rather an enabling than a disabling provision. Such is the only weight to be given to the cases, which, in such great number, have been cited to the court. Murdock v. Lantz, 34 Ohio St. 589, 597; Todd v. Railroad Co., 19 Ohio St. 526; Needles' Ex'r v. Needles, 7 Ohio St. 432, 437; Purcell v. Goshorn, 17 Ohio, 107; Silliman v. Cummins, 13 Ohio, 116; Meddock v. William, 12 Ohio, 377; Lessee of Good v. Zercher, Id. 364; McFarland v. Febiger, 7 Ohio, 194; Connell v. Connell, 6 Ohio, 358. At common law and in Ohio, down to the married woman acts of 1846 and 1861, a man had a freehold estate in all the property of his wife jure uxoris, which he could convey or sell, and which was subject to execution for his debts. Lessee of Thompson's Heirs v. Green, 4 Ohio St. 216. She had no power to make contracts which would bind or affect her property, and, as she could not contract with reference to it, she could not, by her conduct, create a liability with respect to it, or estop herself from asserting a title to it on her husband's death, unaffected by anything done by her during coverture. Drury v. Foster, 2 Wall. 24; Sims v. Everhardt, 102 U. S. 300; Bank v. Lee, 13 Pet. 107, 119; Weatherhead's Lessee v. Baskerville, 11 How. 329, 359; Meegan v. Boyle, 19 How. 130, 150; Todd v. Railroad Co., 19 Ohio St. 514; Rice v. Railroad Co., 32 Ohio St. 380; Murdock v. Lantz, 34 Ohio St. 589; Dukes v. Spangler, 35 Ohio St. 119, 127; Lowell v. Daniels, 2 Gray, 161; Hastings v. Merriam, 117 Mass. 245. This was a general rule at common law, but it had exceptions, and it is with one of the exceptions that we are called upon to deal.

It is a principle which seemed to have general application at common law with respect to persons under disabilities that whatever they could be compelled by law to do they might effectually do without compulsion. Thus in Zouch ex dem. Abbot v. Parsons, 3 Burrows, 1801, Lord Mansfield, presiding in the court of queen's bench in banc, in a case involving the validity of a conveyance by an infant mortgagee, used this language:

"If an infant does a right act, which he ought to do, which he was compellable to do, it shall bind him; as if he makes equal partition, if he pays rent, if he admits a copyholder upon a surrender. But there is no occasion to enumerate instances. The authorities are express, the reason decisive. Generally, whatsoever an infant is bound to do by law, the same shall bind him, albeit he doth it without suit at law. Co. Litt. 172a. The second resolution in Conny's Case, 9 Coke, 85b, is: 'That although the infant in the case at bar was not compellable to attorn, because the manor was not conveyed by him, yet, because by a mean he was compellable to attorn, scilicet, if a fine had been levied, the attornment was good.' Fortescue lays it down larger (18 Hen. VI. p. 6, fol. 2a). He did but that 'which he ought to do; therefore the attornment is good.' The attornment of an infant to a grant by deed is good because it is a lawful act, albeit he be not upon that grant by deed compellable to attorn. Co. Litt. 315a. The reason is manifest. A right and lawful act is not within the reason of the privilege, which is given to protect infants from wrong. His being compellable by any mean, or in any way to do it, proves the act to be substantially what he ought to do. In

the case of Holt v. Ward, 2 Strange, 937, the infant's being compellable by the ecclesiastical court would have answered the objection made there as much as her being compellable by the common law; therefore civilians were heard. To what end should the law permit a minor to avoid an act which in any way, through any mean, by any jurisdiction, he might be compelled to do over again after it was undone? It would be assisting him to vex and injure others without the least benefit to himself."

See, also, 2 Kent, Comm. 242; People v. Moores, 4 Denio, 518; Baker v. Lovett, 6 Mass. 80.

It may be suggested that there is a difference between the act of a married woman concerning her property and that of an infant, namely, that the one is void while the other is only voidable; but it will be seen by reference to common-law authorities that this difference does not prevent the application of the principle under discussion to married women, and especially to the very subject-matter of partition by them. Thus Viner, in his Abridgment (title "Parti-tion," D, 13), says that "partition between husband and wife of lands, if it be equal, shall bind the makers, because they are compellable to make partition; but otherwise of a use because they are not compellable." In section 256, Littleton says that if two parceners take husbands, and then, with their husbands, make unequal partition, it shall remain in force during the lives of the husbands; but at her husband's death the woman with the lesser portion may avoid it. In section 257 he says that if the two parts were of equal yearly value, such a partition could not afterwards be defeated. Commenting on this, Lord Coke says (Co. Litt. 171a):

"Hereby it appeareth that if the parts at the time of the partition be of equal yearly value, neither the wives nor their heyres shall ever avoid the same; and the reason hereof is for that the husbands and wives were compellable by law to make partition, and that which they are compellable to do in this case by law, they may do by agreement without process of law."

In Oldham v. Hughes, 1 Atk. 541, n, a case where an unequal partition of wives' estates had been made by the husbands, with owelty to make up for the inequality, Lord Hardwicke is reported to have said that such a partition did not bind the wives, however long acquiesced in. As the partition was not equal, the case would not seem to be in conflict with Coke's and Littleton's view as cited. But the learned editor of Coke on Littleton (Mr. Hargrave) seems to think otherwise, and, after referring to the case, says:

"But, notwithstanding this high authority, I take the doctrine of Littleton and Coke that such a partition will bind the wives, unless it be unequal, to be clear law, and for the cogent reason here given by the latter;" citing Fitzh. Nat. Brev. 62 F.

The passage in Coke on Littleton, quoted above, has been referred to as stating the law by the supreme court of Ohio in the case of Foster's Lessee v. Dugan, 8 Ohio, 87. In that case Samuel Foster and his wife petitioned the court to make partition of land in which his wife, as tenant in common, held the fee in an undivided one-eighth. After the filing of the petition, and before the partition, the wife died. The commissioners reported that the land could not be aparted without injury. An appraisement was made, and a sale was ordered. Foster and another agreed to take the land at the

appraisement, and a sheriff's deed for an undivided half was made to Foster. The deed recited that Samuel Foster was seised of one-eighth, and had elected to take three other eighths, and then it conveyed to him an undivided one-half. The court held that by the proceeding the only estate passing to Foster was the fee in the three-eighths; that he had a freehold as tenant by the curtesy in the remaining eighth; and that the plaintiffs, as heirs of his wife, could recover, on his death, the remainder in the one-eighth. In discussing the husband's rights, and the effect of his partition, Judge Lane, speaking for the court, said: "A voluntary partition may be made by tenants for life, holding estates in joint tenancy or coparcenary. When made by husbands, of wives' lands, if equal, it binds the inheritance;" referring, among other authorities, to Co. Litt. 171a, where is found the passage above quoted. Judge Lane is not quite accurate in his statement of the law, because he leaves the impression that the partition by the husbands alone would bind the inheritance. This may have arisen from the fact that, in the text of Littleton, two words were omitted, which show the necessity of the wife's joining in the partition to bind her estate. Coke very particularly refers to this omission, and comments on it in his note to the section, saying that the consent of the wives was necessary to bind the inheritance. In the passage above quoted from Coke, he was dealing with coparceners who were by the common law "compellable" to partition by writ, and could make voluntary partition by parol. Co. Litt. § 250, note 169a. By the act of 31 Hen. VIII., tenants in common, having estates of inheritance, were compelled to suffer partition in the same way; and by later statutes partition was made compulsory in all estates in common, whether freehold or for years. The effect of these statutes was not to enable tenants in common who were sui juris to make voluntary partition in any other way than they had before done,—i. e., by parol and livery of seisin (Co. Litt. § 250, note 169a),—because that continued as at common law, but the necessary result of the statute which made married women "compellable" to partition their estates held in common was to give them such power by consenting to or uniting in a partition by their husbands which bound their husbands. No reason appears why a wife might not as well consent to or unite in a partition by parol and livery of seisin as in one simply by parol, and thereby bind herself to that which she was otherwise "compellable" to do. This was the logical result of the reason for the rule in coparcenary, and there is no authority to the contrary in the books. In Ohio, estates in coparcenary exist because the statute uses the term, but they now have the same incidents as tenants in common. Tabler v. Wiseman, 2 Ohio St. 207–210; 4 Kent, Comm. 367. The reason given for the greater facility with which partition could be had between coparceners at common law was that the law favored the partition. The same reason prevails to-day in Ohio with respect to all cotenancies. The language of Judge Lane in Foster's Lessee v. Dugan, 8 Ohio, 87, quoted above, used, as it is, in a case of tenancy in common, justifies the inference that, in the opinion of the court, the rule there stated might properly have weight with respect

to such a tenancy in Ohio. On the whole, it seems to us that in the matter of binding herself by consent and acquiescence in a partition of her estate held in cotenancy at common law a married woman's disability was not so great as in other respects; that if the husband, in a binding way, aparted his life estate, she could by consent bind her inheritance to the same partition if it was fair and equally made. To this modified extent she was sui juris. Nor did the statute of frauds and the statute of deeds affect her power in this respect any more than they did that of a man or an unmarried woman. If, either by common law or in equity, those statutes do not prevent a man or an unmarried woman from being bound by an equal parol partition fairly made, on principles of estoppel, we think a married woman who consents may be equally bound.

This conclusion need not rest ,only on the technical and historical accuracy of our application of the common-law rule concerning a married coparcener's power of partition to the case of a married tenant in common after the passage of the partition statutes. The reason which Coke gives for the power of a married coparcener to bind her inheritance by consenting to an equal partition, namely, that what she was compellable at law to do, having done, she could not repudiate it, taken in connection with the real nature of an equal partition, furnishes quite ground enough, even without direct authority, for recognizing this class of cases as an exception to the somewhat stringent rule enforced by the supreme courts of the United States, Ohio, and Massachusetts, by which a married woman may commit frauds, however gross, in respect of her property, and not estop herself in pais because of her common-law disabilities. To bind a woman to an equal partition to which she gave her consent, and which has for years been acquiesced in, is not at all inconsistent with her general disabilities and helplessness at common law. The partition was not an alienation of her property, so that on her husband's death she would find herself stripped of her estate. In the theory of the law and in fact a partition was generally a benefit to her estate. The essential condition that the partition must be equal to make it binding on the inheritance gave her or her heirs full opportunity to prevent injustice to her or her estate when the rights of her husband ceased. While, for the reasons given, we think a partition to be such a change in ownership of land as to bring it within the purpose of the statute of frauds, the statute of deeds, and the recording act to preserve permanent and public records of such changes, we do not think, so far as the married cotenant is concerned, that an equal partition involves any real change in her estate, because, as held by her in common, it is always subject to partition at the merest whim of her cotenant. In this case, if the cotenants of Margaret Ann Sinclair had not been induced, by her consent and active participation in appropriating the fruits of the parol partition, to rely on it, they might have gone into court, and compelled her to make the same equal partition, which would necessarily have been binding. It has always been the law of Ohio that married women and all others could be compelled to partition their estates. By act of 1820, which was in force when the parol parti-

tion in this case is said to have taken place, "joint tenants, tenants in common, and coparceners of any estate in lands might be compelled to make or suffer partition of such estate" in the manner prescribed in the act. Chase's St. 1162.

There is no case in Ohio which conflicts with the views here expressed. In Williams v. Pope, Wright (Ohio) 406, it was sought to compel a married woman and her husband, who had consented by parol to a division of her father's estate, and had gone into possession of a 10-acre lot under the division, to make a release of the rest of the land. The court refused to grant this relief against the wife, but it is evident from the case that there has been no attempt to make an equal partition of the land. The equality of division was produced by distribution of personalty, which would become the absolute property of the husband, and it would, of course, be impossible to bind the inheritance of the wife, even with her consent, where her purparty was eked out by that which was at once to become her husband's. In Piatt v. Hubbell, 5 Ohio, 243, there was a partition of land made by commissioners, on a petition filed in court, between the heirs of one W. Perry, some of whom were minors. Possession was taken in conformity with the partition, and improvements were made on the faith of it. But the partition was claimed to be wholly ineffectual as a judicial proceeding, because there had been no judgment of confirmation. After a lapse of some years, a suit was brought in equity to set aside these partition proceedings and for a second partition. The court dismissed the bill. Judge Lane disposed of the case as follows:

"We do not think it necessary to decide what is the precise effect of these proceedings. It is evident the partition was in fact made between the parties in 1814, which at that time was equal; and that all the adult parties took possession of their respective shares, and have ever since held them in severalty, built upon and improved them, on the faith of its validity. This court, in chancery, would not disturb a parol partition, originally fair, in which there had been so long acquiescence, and such acts of confirmation. No difficulty is found in disposing of all the rights except that remaining in the children of Mrs. Stratton, who were minors at the institution of this suit. We have been led to conclude that even to these the same principles are applicable. They were parties to the original partition, and we believe it was fair. Separate possession, the erection of houses, and sales of parts of the property, have been had upon the faith of its validity. If it be invalid, it becomes so from the common mistake of those who managed it that no confirmation by the court was necessary. If these minors ever possessed the right to set aside these proceedings, the subsequent transactions render it inequitable for them to exert it. We feel at least that, to produce this effect, they have not the right to invoke to their aid the extraordinary powers of chancery."

While the foregoing case is not directly in point, it shows with what favor the supreme court of Ohio regards equal parol partition carried out by possession and improvements on the faith of it, even against persons who are under disability when consenting to it. Though we have no direct authority in Ohio to sustain the view we have taken, it has the support of several adjudicated cases in other states and of the leading American text writer on the subject, Mr. Freeman. In his book on Cotenancy and Partition, this learned author says (section 412):

"In most, if not all, of the United States, a conveyance made by a married woman must be acknowledged before some officer who has first made her acquainted with its contents, on an examination without the hearing of her husband. The object of the law is, doubtless, to prevent coercion or undue influence on the part of the husband. But if a conveyance made by a married woman is intended to operate as a partition of lands held by herself and others as cotenants, and is followed by a holding of the property by the several cotenants in pursuance of such partition, the partition cannot be avoided on the ground that the deed was not acknowledged by the married woman on an examination without the hearing of her husband."

Again, in section 415, he says:

"We have seen that voluntary partitions made by or on behalf of infants and femes covert will be treated as binding and valid where they were equal at the time they were made, and were, in their inception and consummation, free from all taint of fraud. The theory upon which such partitions are enforced is that the interests of the cotenants are always best promoted by an occupation in severalty, and, therefore, that all honest and fair agreements, having a direct tendency to authorize such occupation, ought to be sustained. These parties, though under disability, may be compelled to make partition, and whatever the law will compel them to do it ought to allow to be done without compulsion."

In Bumgardner v. Edwards, 85 Ind. 117, a woman married a second time, and, holding by descent an undivided one-third of the lands of a former husband, made a fair partition with her children by the former marriage by deeds of herself and her husband. A statute of Indiana forbade a widow who married again to alienate lands received from her first husband. The wife in this suit sought to partition the rest of the land, in which she claimed an undivided third, and maintained that the first partition, under which possession had been had for five years, was not binding on her because of the statute. It was held that the partition could not be repudiated by her; that, as she could have been compelled to partition, the disability imposed by the statute did not cover such a case. In Deweese v. Reagan, 40 Ind. 513, where a wife sought by virtue of the same statute to annul her deed executed during a second marriage in pursuance of a contract to convey made during her widowhood, it was held that the deed was good, "because, notwithstanding the statute," said the court, "parties may voluntarily do without suit that which a court would require them to do with suit." In these cases the disability of the wife was declared by statute, but Coke's reason for binding married coparceners created an implied exception. In the case of Hardy v. Summers, 10 Gill & J. 316, Summers and wife filed their bill to enjoin Talburt from proceeding at law to partition land, part of which was in possession of the plaintiffs. It appeared that Summers' wife and Ann Hardy had inherited from their father the property sought to be partitioned, and had entered into a written agreement to divide it equally during Mrs. Summers' coverture, and that Summers did not sign the agreement. The parties entered into possession of their respective parts, and had quiet enjoyment for 15 years, when Ann Hardy made a deed of all her interest in her father's estate to Talburt, who at once brought suit to partition the entire estate, denying the validity of the former partition on the ground that it was void because made by a married woman, not in conformity with the statute of deeds, and without her husband's

joining in it, and so was not binding on the other party. The court declined to take this view, but held that the agreement, to which her husband had consented, having been consummated by actual division and possession for 14 years, was binding on all parties, and enjoined the suit for a second partition. The statute of deeds in Maryland makes a privy examination of the wife quite as essential as that of Ohio to the validity of her deed. Hollingsworth v. McDonald, 2 Har. & J. 230. In Darlington's Appropriation, 13 Pa. St. 431, a parol partition had been made between tenants in common, one of whom was a married woman and another a minor. The creditors of one of the cotenants sought to set it aside after years of exclusive possession under it. The court denied the relief asked, saying:

"As these parties did no more than they might have been coerced to at law, their acts in pais are binding, though one of them was under coverture and another a minor."

Mr. Justice Strong,—afterwards of the supreme court of the United States,—in McConnell v. Carey, 48 Pa. St. 348, used this language:

"It is true that family arrangements are regarded with favor, and a parol partition among heirs, if fairly made, is binding even upon femes covert, if they are parties to it, and assent to the arrangement."

Similar rulings have been made in Calhoun v. Hays, 8 Watts & S. 127; in McMahan v. McMahan, 13 Pa. St. 376; in Williard v. Williard, 56 Pa. St. 127. See, also, Bavington v. Clarke, 2 Pen. & W. 115, and McLanahan v. McLanahan, Id. 279. In Bryan v. Stump, 8 Grat. 241, a brother and sister, both of whom were married, made partition of land owned by them in common by a partition deed, with no certificate of privy examination of the wives as required by statute. Possession was taken by the parties under the partition, and maintained for many years. In a controversy between a vendor and purchaser as to whether this created a cloud upon the title, it was held that it did not. In Wardlow v. Miller, 69 Tex. 399, 6 S. W. 292; Aycock v. Kimbrough, 71 Tex. 330, 12 S. W. 71; and Cravens v. White, 73 Tex. 577, 11 S. W. 543,—married women were held bound by parol partitions carried into force by actual division and possession accordingly, when they were shown to have consented to the same. See, also, Townsend v. Downer, 32 Vt. 183.

The authority of the cases cited upon the point now under discussion is not at all affected by the circumstance that they are nearly all of them in states where parol partition is held not to be within the statute of frauds or the statute of deeds, differing in that respect from the law of Ohio as we have found it to be. The question we are now considering is whether a married woman at common law was disabled from binding herself by uniting with her husband in a parol partition, fairly and equally made, which was followed by long possession. The cases cited hold that she was not so disabled, because she might have been compelled to submit to such a partition by judicial proceeding. Whether parol partitions without possession are invalid by reason of the statute of frauds and perjuries, and whether the legal title to the allotted share passes to the allottees, are wholly different questions. One case cited to show that a mar-

ried woman cannot be bound by a partition to which she consented is Gates v. Salmon, 46 Cal. 362. That case shows no possession under the agreed partition, and is not in point. In Jones v. Reeves, 6 Rich. Law, 132, under a practice which permitted no defense by equitable estoppel to an ejectment, it was held that a parol partition could not prevail as a defense, especially against a married woman, unless exclusive possession had been continued long enough to raise the bar of the statute. What would be the view in that state now, when equitable defenses may be made to an action at law, we cannot say. Much reliance is placed by counsel for the plaintiffs below on the case of Weatherhead's Lessee v. Baskerville, 11 How. 329. In that case the controversy was really over the construction of a will, and turned on the question whether the will gave five daughters an equal share in the testator's real estate with his five sons, or only gave to each daughter a small tract of land, and divided the residue among the sons. It was sought to estop a daughter from suing to partition the whole property, because she, while under coverture, had taken a small tract of land from the executors, and had united with her husband in selling it as their property. The partition of the land was not equal between her and the sons, or anything like it, and the attempt was really to estop a married woman with reference to a matter in respect of which her disability was complete, namely, an agreed construction of her father's will. It was not a case where she had done something voluntarily which she might by law have been compelled to do, because the supreme court found that under the will the daughters were entitled to share equally with the sons in the land.

On the whole case, therefore, we are of the opinion that, by the law of Ohio, parol executory agreements for partition made by cotenants are within the statute of frauds, and not enforceable; that, though they be followed by long possession in accordance with their terms, they will not vest the legal title in the allottees to their respective shares; that any conduct which estops one in pais to assert title or the right of possession to land is a good defense to an action at law for its recovery by such person in the courts of the United States; that a parol partition, consummated by long possession and acquiescence by all the former cotenants, estops each to assert title or the right to possession contrary to its terms; that at common law that which married women and infants and others under disability might be coerced by law to do, they might do with binding effect, by voluntary act; that, on this principle, partition of land held in cotenancy by married women, would bind their inheritance, if equally and fairly made by their husbands and consented to by them; that the statute of frauds and the statute of deeds in Ohio had no greater restrictive effect on the powers of married women than upon those of unmarried women, the one rendering unenforceable parol executory contracts, and the other limiting the mode in which legal title to interests in land could be passed by act of the owner; that neither of them had any effect to disable a married woman to create an estoppel in pais against herself cognizable in general by courts of equity and as a matter of defense in courts

of law; that such an estoppel was possible or not, as it was consistent or not with her general common-law disabilities; that, in general, her common-law disabilities made her contracts and acts wholly ineffectual to bind her land, and prevented the possibility of an estoppel in pais to defeat her assertion of title therein; but that, because of her power at common law, as a cotenant, to consent to an equal partition by her husband, and to bind her inheritance thereby, she could estop herself in pais by consenting to a parol partition by her husband, if equal and fairly made, and followed by long possession and acquiescence, because such partition bound her husband, and was one to which she could at law have been coerced. The questions whether there was a parol partition and whether it was equal, are for the jury. The burden is on the defendants below to establish the parol partition, and Mrs. Sinclair's consent to it, and long acquiescence in it by all concerned. After these facts have been shown, presumptions of the fairness and equality of the partition may be indulged, if nothing to the contrary appears. Bumgardner v. Edwards, 85 Ind. 126. The judgment of the court below is reversed, with instructions to order a new trial.